# Bell v. The State.

*Indictment for Murder.*

1. *Organization of jury; separation of jurymen before being sworn, no ground for quashing panel.*—Where, after the drawing and selecting of the twelve jurors to constitute the panel to try a capital case, but before said jurors are sworn f r the trial of said case, the fact that two of such jurors separated themselves from the others, constitutes no ground for quashing the panel of jurors drawn, or for discharging from the panel selected the two jurors who so separated themselves from the others.
2. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where a witness for the State had testified to the shooting of the deceased by the defendant, the state-

[Bell v. The State.]

ment of such witness, in response to a question asked by the defendant on cross-examination as to the manner of defendant's action at the time of the shooting, that "defendant acted like he thought five or six men were after him," is a statement of a mere conclusion of the witness, and should be excluded.

3.  *Same; same; evidence as to insanity.*—On a trial under an indictment for murder, where the defendant pleads not guilty, and the statutory plea of "not guilty by reason of insanity," and the father of the defendant testifies to facts tending to show that the defendant was mentally unbalanced and that there was insanity in the family of his ancestors, it is competent for the State, on the cross-examination of the defendant's father, to ask him "Has the defendant ever been crazy?" "Is the defendant crazy now?"

APPEAL from the Circuit Court of Madison.

Tried before the Hon. PAUL SPEAKE.

The appellant in this case, Bud Bell, was indicted and tried for the murder of Frank Stewart, was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for twenty years.

After the twelve jurors constituting the panel to try the case had been selected and had taken their places in the jury box, the judge presiding, before having the oath administered to such jurors, allowed them ten minutes in which to send messages to their families and make any other arrangements they might desire before entering upon the trial; but instructed them that "they must not leave the court room or separate themselves from one another." Notwithstanding this admonition from the presiding judge, and without the consent of the court or the defendant, Will Woodey and G. W. Woodey left the court room and separated from the other members of said panel of jurors, and were absent from the court room for a period of about ten minutes. After their return to the court room, and before the trial was entered upon, defendant, through his attorneys, in open court, moved the court to quash the panel of the jury drawn and selected to try the case, upon the ground that the said Will Woodey and G. W. Woodey had separated from the other members of the jury which were drawn

and selected. The court overruled the motion, and to this ruling the defendant duly excepted. Thereupon the defendant moved the court to discharge from the regular panel selected to try the case the said Will Woodey and G. W. Woodey, upon the ground that they had separated from the other members of the jury. The court overruled this motion, and the defendant duly excepted.

The defendant filed the following pleas: 1st. Not guilty. 2d. Not guilty by reason of insanity. 3d. Not guilty by reason of excessive drunkenness.

The evidence for the State tended to show that the defendant had a dispute with one Solway, while they were in a bar room; that the defendant drew his pistol and fired upon Solway, who ran out of the bar room; that thereupon he turned and fired upon several people who were standing near a stove in the bar room, and upon their running away, he turned and fired upon one Frank Stewart who had come into the bar room and was leaning against the counter; that his shot struck Stewart in the heart, and he ran out of the bar room and fell dead on the sidewalk; that at the time the defendant shot at Stewart the latter had said nothing to him and had just come into the bar room; that Stewart died from the effects of the wounds inflicted by the defendant.

There was some evidence introduced tending to show that the defendant, at the time the fatal shot was fired, was drunk.

Dave Penny, a witness for the State, testified that he was present when the said Stewart was shot by the defendant; that the defendant looked like he had been drinking, but did not appear to be drunk. Upon the cross-examination of the witness Penny, the defendant's counsel asked him to describe more fully the manner of defendant's action at the time of the shooting. The witness replied that "the defendant acted like he thought five or six men were after him." The State moved to exclude this answer of the witness, the court granted the motion, excluded the answer, and to this ruling the defendant duly excepted.

There was some evidence introduced on the part of the defendant tending to show that he was insane when un-

der the influence of whiskey, and that at the time of the killing of Stewart he was very drunk.

The defendant introduced as a witness in his behalf H. S. Bell, who testified that he was the father of the defendant, and that there was insanity in the defendant's family on his father's side and his mother's side, and that several of his relatives had died in the insane asylum. Upon the cross-examination of the said witness H. S. Bell, the State asked him the following question: "Has the defendant ever been crazy?" The defendant objected to this question, upon the ground that it called for illegal and incompetent evidence, the court overruled the objection and the defendant duly excepted. The witness replied that the defendant had all of his life been "subject to spells," and that this was especially true when he was drunk. The State then asked the witness the following question: "Is the defendant crazy now?" The defendant objected to this question, upon the ground that it called for illegal and incompetent evidence, and upon the further ground that the witness was not shown to be an expert on insanity. The court overruled the objection, and the defendant excepted. The witness answered: "I do not know that he is what you would call crazy now." The defendant moved to exclude this answer, and duly excepted to the court overruling his motion.

There was evidence introduced on the part of the defendant tending to show that he was a man of good character, and had a good reputation in the community where he lived.

The bill of exceptions contains the following recital as to the request of the defendant to have certain charges given by the court: "At the conclusion of the evidence, and after the oral general charge of the court to the jury upon the law and the evidence, the defendant requested the court to give in his behalf to the jury, the following special charges in writing, to the refusal of the court to give which, severally and separately, the defendant in open court duly excepted."

The charges referred to were the following: (2.) "If the jury believe from the evidence that there was no mal-

OF ALABAMA. 61

ice upon the part of the accused against the defendant, at the time he fired the fatal shot, you can not convict him of murder in the first degree." (7.) "If the jury believe from the evidence beyond a reasonable doubt that at the time the defendant fired on the deceased, he was laboring under temporary mental incapacity to design to kill deceased, he can not be convicted of murder at most, and if you further have a reasonable doubt as to whether or not he was so drunk that he could form the specific intent to kill the deceased, he can only be convicted of manslaughter in the second degree." (9.) "If the jury have a reasonable doubt arising from all the evidence, as to whether or not the defendant was so drunk or intoxicated that he could not form a specific intent to kill deceased, or to do him great bodily harm, then you should acquit him." (11.) "If you are reasonably doubtful as to the proof in this case of any material allegation of the indictment, you must acquit the defendant." (15.) "If the jury believe the evidence beyond a reasonable doubt, you must find the defendant not guilty." (18.) "If the jury are not satisfied beyond a reasonable doubt, to a moral certainty and to the exclusion of every other reasonable hypothesis but that of the defendant's guilt, they should find him not guilty, and it is not necessary to raise a reasonable doubt that the jury should find from all the evidence a probability of the defendant's innocence, but such a doubt may arise, even when there is no probability of his innocence in the testimony; and if the jury have not an abiding conviction to a moral certainty of his guilt, it is the duty of the jury to find the defendant not guilty. The jury must find the defendant not guilty, if the conduct of the defendant upon a reasonable hypothesis is consistent with his innocence." (26.) "If the defendant has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed except for such good character." (21.) "If there is probability of defendant's innocence, the jury must acquit." (22.) "I charge you to acquit unless the evidence excludes every reasonable supposition but that

[Bell v. The State.]

of the defendant's guilt." (28.) "I charge you, gentlemen, that the presumption of innocence attends the accused as a matter of evidence throughout the trial." (29.) "A man may in many instances be so drunk as to be incapable of forming or entertaining any specific intention at all." (31.) "Intoxication may render the accused incapable of forming or entertaining the specific intent which is a material ingredient of the crime of murder." (37.) "I charge you that while the fact that a man is drunk is no defense for crime, if the drunkenness is such that it renders the person intoxicated incapable of forming the intent to take the life of the deceased, you must acquit." (A.) "I charge you to acquit the defendant of murder in the first degree." (B.) "I charge you to acquit the defendant of murder in the second degree." (C.) "I charge you that you cannot convict the defendant of murder." (D.) "I charge you that under the evidence, you cannot convict the defendant of a greater degree of homicide than manslaughter." (E.) "A reasonable doubt is a doubt for which a reason can be given." (F.) "I charge you that you are now trying Bud Bell for the killing of Frank Stewart; not for any other killing or killings that may have occurred in this county." (G.) "I charge you that you should not consider any other killing or killings that may have occurred in this county in fixing punishment upon the defendant." (H.) "I charge you, gentlemen of the jury, that it is better that ninety and nine guilty men should go free, than that one innocent man should be punished." (I.) "I charge you that it is incumbent upon the State to show to your satisfaction beyond a reasonable doubt, that the defendant was sufficiently sober to entertain the specific intent necessary to constitute the crime of murder."

BANKHEAD & DRAKE and R. C. BRICKELL, for appellant.—The charges requested by the defendant and refused to be given by the court, should have been given. *Bell v. State,* 115 Ala. 34; *Bones v. State,* 117 Ala. 138; *Porter v. State,* 135 Ala. 51; *King v. State,* 90 Ala. 612; *Fields v. State,* 47 Ala. 603.

MASSEY WILSON, Attorney-General, for the State.

The court did not err in refusing to quash the venire or to discharge the two jurors who had separated themselves from the others. Until the jurors were sworn they had a right, if permitted by the court, to go out of the court room, to discuss the case or to do anything else that they might do as citizens. No facts are shown here ' to support the motions made by the defendant other than the mere fact of the separation of the two jurors. This is not sufficient.—*James v. State,* 53 Ala. 380; *Robins v. State,* 49 Ala. 394.

The statement of the witness Perry that the "defendant acted like he thought five or six men were after him," was properly excluded, being solely the conclusion of the witness.—*Carney v. State,* 79 Ala. 14; *Harrison v. State,* 78 Ala. 5.

The refusal of charge No. 2, requested by the defendant, having reference to murder in the first degree, if error, was without injury.—*Jarvis v. State,* 138 Ala. 17.

Charges 7 and 9 were properly refused.—*Fonville v. State,* 91 Ala. 39; *Martin v. State,* 119 Ala. 1.

Charges 11, 18, 21 and 22, if given, would have tended to mislead the jury as to the burden and degree of proof under the special plea.—*Porter v. State,* 135 Ala. 51; *Maxwell v. State,* 89 Ala. 150.

Charge 20 was erroneous, as giving undue prominence to the good character of the defendant.—*Goldsmith v. State,* 105 Ala. 8.

Charge 26 was bad.—*Waters v. State,* 107 Ala. 108.

Charge 37 asserted an incorrect proposition of law. Drunkenness does not authorize an acquittal entirely, but may reduce the crime from murder to manslaughter. *Morrison v. State,* 84 Ala. 405; *Cleveland v. State,* 86 Ala. 1.

The other charges refused to the defendant were properly refused.—*Avery v. State,* 124 Ala. 20; *White v. State,* 133 Ala. 122; *Garlick v. State,* 79 Ala. 265; *Rarden v. Cunningham,* 136 Ala. 263.

TYSON, J.—Motion was made by defendant to quash the panel of jurors drawn and selected to try the case;

also to discharge from the panel selected the two Woodeys. These motions were predicated upon the fact that these two venire-men had separated themselves from the other ten, all of which had been selected and were to compose the jury to try the case. The twelve venire-men had not been sworn as jurors. From this statement it will be seen that the question presented is whether the rule in capital cases forbidding the jury to separate applies.

This question is *res integra* in this State. It has, however, frequently arisen in other jurisdictions, notably in the famous trial of Burr. In that case, it being impracticable to empanel a jury on the first day, four were sworn, and the question being raised, whether they should be confined, the decision of Chief Justice MARSHALL was, "that there was no necessity for delivering the jurymen, who had been or should be sworn, unto the custody of the marshal, until the whole number had been empaneled and sworn."

The question came before the Supreme Court of Missouri in the case of *The State v. Burns* (33 Mo. 483), and after a review of the authorities, English and American, the court held that the rule does not apply to venire-men before being sworn. "In fact," says the court, "they were not jurors, and not, therefore, in the custody of any officer of the court. Though selected by both State and prisoner, they were not clothed with the power and authority of a jury, but were still subject to be set aside, excused or challenged. See also *Martin's case,* 2 Leigh (Va.) 745; *Epe's case,* 5 Gratt. 676; *Tooel v. Com.* (Va.) 11 Leigh 714; *Curtes v. Com.* 87 Va. 589; *Woodson v. State,* 40 Tex. Crim. Rep. 685; *Smith v. State,* 63 Ga. 168; *State v. Voorhees,* 12 Wash. 53.

Coke, Foster and Blackstone state the rule to be "that after the *jury are sworn and charged with the prisoner and after evidence* has been given the jury cannot be discharged or separated."—*Martin's case, supra.*

Doubtless the defendant had the right, if he entertained the notion that the two venire-men had been talked with about the case, to have their impartiality tested again before the oath was administered to them.

His failure to ask this of the court was a waiver of the right.—*Smith v. State, supra.* The motions were properly overruled.

The statement of the witness Penny that "defendant acted like he thought five or six men were after him," was a mere conclusion and was properly excluded.—*Carney v. State,* 79 Ala. 14; *Harrison v. State,* 78 Ala. 5.

In view of the defense of "not guilty by reason of insanity" and the effort to establish it, the questions propounded to the defendant's father by the solicitor, on cross-examination, were not improper.

It would seem that the request made to give the refused charges should be construed as a request to give them in their entirety.—*Verberg v. State,* 137 Ala. 73. However this may be, under the issues upon which the case was tried, all the charges were properly refused. See authorities cited in brief of Attorney-General.

Affirmed.

## Indictment for Murder.

