# Smith *v.* The State.

## *Murder.*

(Decided April 15, 1913. 62 South. 184.)

1. *Homicide; Defenses.*—The fact that deceased, who was the hus-band of the sister of defendant, had made threats against his wife and had stolen their children away from her and put them in a house of bad repute, would not reduce an otherwise inexcusable killing below the grade of murder.

2. *Same; Evidence.*—Where the prosecution was for murder, and the defense was insanity, any error in admitting evidence of conversations between the brother of defendant, and his mother and sister, as to defendant's insanity, was not prejudicial where the evidence of the statements of the mother and sister was merely corroborative of their own testimony.

3. *Evidence; Demonstrative Evidence.*—Where there is no special reason for it, it is improper practice to permit witnesses to demonstrate to the jury the appearance and condition of the clothing worn by deceased, as to where the bullets entered and how many holes there were.

4. *Same; Opinion; Expert.*—One must have special knowledge as an expert to be qualified to testify that wounds are made by a bullet of a particular caliber.

5. *Same; Expert; Age.*—It requires special knowledge to give an opinion as to the age of defendant.

6. *Appeal and Error; Harmless Error; Evidence.*—Where it was not disputed that defendant was twenty years of age at the time of the homicide, error in permitting one not having knowledge of his age to give an estimate thereof, was harmless.

7. *Same.*—Where there was no dispute about the nature of the wound, or the caliber of the bullet, it was harmless error to permit one not qualified to state that the wounds on deceased were made by bullets of a particular caliber.

8. *Witnesses; Cross-Examination.*—Where the prosecution was for homicide and the defense was insanity, evidence of conversations between defendant's brother, his mother and sister on the subject of defendant's insanity, was competent on cross-examination to test the value of the witness's opinion as showing the sources to which it might in part be ascribed, and the influences which may have moulded it.

'9. *Charge of Court; Insanity; Burden of Proof.*—Section 7175 requires that the defense of insanity be proven to the reasonable satisfaction of the jury, and the oral charge of the court that if, after considering all the evidence, that tending to show insanity as well as that tending to show sanity, in connection with the legal presumption of responsibility, the jury should have a reasonable doubt as to

whether or not defendant is insane, they need not further consider the issue of insanity, was erroneous as requiring defendant to prove insanity beyond a reasonable doubt.

10. *Same; Reasonable Doubt.*—A charge requiring an acquittal based upon a reasonable doubt of the guilt or innocence of defendant is properly refused.

11. *Same.*—A charge asserting that if, after considering all the evidence, that tending to show guilt, together with that tending to show innocence, there should arise voluntarily in the minds of the jury from any part of the evidence a probability of innocence, the jury must acquit, correctly stated the law though some of its verbiage is slightly objectionable and its refusal was error.

12. *Same; Argumentative.*—Charges requiring an acquittal unless the jury are so convinced by the evidence of defendant's guilt that they would each venture to act upon it in matters of the highest concern to themselves, are argumentative and properly refused.

13. *Same; Covered By Those Given.*—The refusal of a correct instruction is not error where the propositions therein asserted are substantially covered by written charges given.

14. *Same; Invading Jury's Province.*—Charges hypothesizing the finding of insanity upon "lack of ease, uneasiness, distress, trouble, etc.," invade the province of the jury, since such conditions, while often symptoms or causes of mental diseases, were not mental diseases of themselves.

15. *Same; Singling Out Evidence.*—Charges which single out particular evidence and instruct action thereon are properly refused.

16. *Same; Duty of Jury.*—Charges asserting that the failure of juries to do their duty in other trials of homicide in the county had nothing to do with this case, and should not influence the verdict, were properly refused.

17. *Same; Mental Capacity.*—Instructions on insanity are properly refused which omit, as an essential condition to irresponsibility because of inability to refrain from doing a criminal act, the fact that such inability resulted solely from mental disease.

18. *Same.*—A charge asserting that a mere insane impulse controlling the will or judgment would make defendant irresponsible if he acted thereunder, incorrectly stated the law.

19. *Same.*—Charges on insanity predicating irresponsibility on a finding that the killing was "an offspring or product of mental disease in defendant," omitted essential conditions, and were properly refused.

20. *Homicide; Evidence.*—In a prosecution of defendant for killing the husband of his sister while alleged to be insane, as the result of wrong done his sister by her husband, the fact that defendant had often sent a part of his wages to his sister for her support was not admissible.

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

Mark Smith was convicted of murder, and appeals. Reversed and remanded.

The facts sufficiently appear from the opinion.

The following charges were refused the defendant:

(5) "You cannot convict the defendant unless the evidence be so strong and convincing as to exclude every other reasonable hypothesis except that of the guilt of defendant, and if, after considering all the evidence in the case, that tending to show guilt, as well as that tending to show innocence, the jury should have a reasonable doubt as to whether the defendant is guilty or innocent, they must acquit him."

(7) Same as 5.

(13) Bases an acquittal unless the jury are convinced by the evidence of the defendant's guilt, in such a manner that they would each venture to act upon it in matters of the highest concern and importance to themselves.

16. "The court charges the jury, if, after considering all the evidence in the case, that tending to show guilt, together with that tending to show innocence, there should spring up involuntarily in the minds of the jury from any part of the evidence a probability of the innocence of the defendant, the jury must acquit."

A1. "A person's mind is diseased when there is lack of ease, uneasiness, distress, trouble, trial, a derangement of any of the vital functions in which their natural action is interrupted or disturbed, and causing pain and weakness, morbid or unhealthy condition, malady and sickness, and if, after you have considered all the evidence in this case, you should become satisfied that defendant's mind at the time he fired the fatal shot was so diseased that he might know right from wrong, but his mind was so afflicted and diseased as to render him incapable of refraining from doing the act, and that

such mental aberration or affliction had relation to the shooting of the deceased, then I charge you the defendant would not be legally responsible, and it would be your duty to so find."

D1. "The court charges the jury the law never presumes a defendant guilty of murder when upon trial upon an indictment therefor, but presumes he is innocent of such crime, and when a defendant, as in this case, interposes the plea of not guilty, together with the plea of not guilty by reason of insanity at the time of the killing, the burden is on the defendant to reasonably satisfy the jury by the evidence that at the time of the killing of the deceased he possessed such mental aberration, disease, or affliction of mind relative to the acts charged as to either render him incapable of knowing right from wrong, or of choosing between right and wrong, and if, after you have considered all the evidence in the case, including that tending to show mental disease and unsoundness of mind, you should become reasonably satisfied that by reason of mental insanity and disease of defendant he did not at the time he fired the fatal shot possess the ability to refrain from doing the act, or that there exists in the mind of the jury a reasonable doubt of the defendant's guilt of any crime charged in the indictment, then it will be your duty to so find by your verdict."

E1. "The court charges the jury that in determining whether or not the defendant was, at the time of the killing of deceased, insane or possessed such mental aberration or disease as to render him incapable of choosing between right and wrong, you have the right to consider the evidence, if any, tending to show that deceased had made the statements concerning his mother and sister, also the treatment defendant was advised his mother and sister had received at the hands of the de-

[Smith v. The State.]

ceased, the threats made by the deceased to kill defendant's mother and sister, the evidence, if any, tending to show that defendant on his return from the navy found his mother and sister in constant state of fear and dread, to such an extent that they refused to retire at night, and the evidence, if any, that defendant was nervous and sleepless, that he rested under a dread and constant fear of impending danger to his mother and sister from the deceased, and all other facts and circumstances which may tend to show mental disturbance of the defendant; and, after you have considered all in connection with the evidence of the state tending to show the sanity of the defendant, it will be your duty to find whether or not the defendant has reasonably satisfied you from the evidence that he was afflicted mentally as not to be able to refrain from doing the shooting of the deceased, and, if he has so reasonably satisfied you from all the evidence, it will be your duty to find by your verdict that he is not legally responsible for the crime charged."

X2. "In order to constitute a crime, the accused must have, at the time, memory and intelligence sufficient to know the act he is about to commit is wrong; to remember and understand that if he commits the act he will be punished, and, besides this, reason and will to enable him to comprehend and choose between supposed advantage at the gratification he obtained by the criminal act and the immunity from punishment, which he will secure from abstaining from it."

O3. "The failure of juries to do their duty in other trials of homicides in this county has nothing to do with this case, and should not influence your verdict. You are to try this case according to the evidence adduced from witnesses, and under the law as it is given you by the court, and render your verdict accordingly."

[Smith v. The State.]

Y2. "If the jury believe and are reasonably satisfied from the evidence that the defendant was moved to action in shooting the deceased by an insane impulse controlling his will and his judgment, then he is not guilty of the crime charged."

W. J. BOYKIN, for appellant. The court erred in admitting evidence as to the caliber of the bullet inflicting the wounds on deceased, as the witness was not shown to be an expert.—*B. R. & E. Co. v. Ellard,* 135 Ala. 433; *Depew v. State,* 44 Ala. 32; *Price v. State,* 100 Ala. 144; Wig. on Evid. sec. 555; 151 U. S. 607. On the same authority the court erred in permitting the witness to state the age of defendant. The court also erred in permitting defendant's brother on cross-examination to be asked as to conversations with his mother and sister relative to defendant's mental condition.—*Humes v. O'Brien,* 74 Ala. 64; *Rivers v. State,* 97 Ala. 72; *Jackson v. State,* 106 Ala. 60; *Hussey v. State,* 87 Ala. 121; *James v. State,* 115 Ala. 83. The court should have permitted it to be shown that defendant sent part of his wages to help support his sister and her children. The court erred in permitting the clothing to be exhibited, and the witness to point out their condition, and the points of entrance of the bullets.—*Rollins v. State,* 160 Ala. 86; *Robinson v. State,* 108 Ala. 14. Charge 1 should have been given for defendant.—*Mills v. State,* 1 Ala. App. 76; *Segars v. State,* 86 Ala. 59. Charge 8 should have been given.—*DeArman v. State,* 71 Ala. 351. It was error to refuse charge 10.—*Bluett v. State,* 151 Ala. 50; s. c. 161 Ala. 16; *Heinninberg's Case,* 151 Ala. 28. Charge 16 should have been given.—*Odom v. State,* 172 Ala. 383; *Spragins v. State,* 139 Ala. 93. Charge Z2 should have been given.—*Parsons v. State,*

81 Ala. 577; *Parrish v. State,* 139 Ala. 16; *Braham v. State,* 143 Ala. 28.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. There was no dispute as to the nature and character of the wound and it is admitted that defendant was twenty years of age at the time of the killing, and if evidence relative to these matters was erroneously admitted because the witnesses are not shown to be experts the error was not at all prejudicial. The cross-examination of defendant's brother was within legitimate bounds.—*Noblin v. State,* 100 Ala. 13; *Martin v. State,* 104 Ala. 71; *Hill v. State,* 146 Ala. 51. The testimony as to the clothing worn by deceased, and the clothing itself, was properly admitted.—*Miller v. State,* 107 Ala. 40; *Stephens v. State,* 138 Ala. 71; *Andrews v. State,* 159 Ala. 14; *Barnett v. State,* 165 Ala. 59. The erroneous part of the court's oral charge as to defendant's insanity was corrected in a later part of the charge.—*Parrish v. State,* 139 Ala. 16. In any event, the exceptions to it failed in the requirement of certainty, and the court will not be put in error.—*Lacey v. State,* 154 Ala. 55; *Pugh v. State,* 4 Ala. App. 144. Charge 3 was properly refused.—*Rogers v. State,* 117 Ala. 9; *Montgomery v. State,* 169 Ala. 12. Charge D1 was properly refused.—*Parrish v. State, supra; Braham v. State,* 142 Ala. 28. Charge Xa is erroneous.—*Parrish v. State, supra.* Counsel discuss the other charges, but without further citation of authority.

SOMERVILLE, J.—The defendant, 20 years of age, after four years absence in the naval service, returned home and was living in the house with his mother and sister. He reached home on Friday, and on the following Thursday night he killed his brother-in-law, Tur-

ner Lewis, by shooting him to death with a pistol. He was indicted for murder and tried on pleas of "not guilty," and "not guilty by reason of insanity." He was found guilty of murder in the second degree and sentenced to imprisonment for 40 years.

Defendant's sister was the wife of deceased, but had separated from him some time previously, after which deceased had repeatedly exhibited hostility towards her and her mother and younger brother, manifested by threats to kill, and charges of unchastity and prostitution. He had also, it is claimed, stolen away from his wife one of their two children, a little girl, and carried her to Atlanta and placed her with another woman in a house of ill fame, from which she was afterwards rescued by the mother. Upon his return home, defendant, who was in poor health, was informed of these grievous wrongs, and, according to the testimony of the members of his family, was profoundly affected thereby, and had brooded over them until his mind was affected and he became insane. On the night of the killing his mother had called him home and discussed with him the fact of deceased's presence near by in Alabama City, as a result of which she had gone to bed nervous and ill. After waiting there a few minutes, defendant put a pistol in his pocket, went to Alabama City, and, going to the house of one Noble, where deceased was staying, he requested of Noble an interview with deceased. The latter had retired to bed, but Noble showed defendant into his room and left him there. Defendant's account of what followed is as follows: On direct examination: "I went in there and spoke to Lewis and asked him how he was, and told him to get up, and come outside; I wanted to talk to him. He said, 'What in the hell do you want?' and ran his hand under the pillow. When he did that, I asked him what he had to say for him-

self, and that is the last I realized what I had done. * * * I did not appreciate what I was doing at the time." On cross-examination: "I shot Turner three times, but I do not know where I hit him the first time, nor do I know where the second shot hit him. * * * He was on the left side of the bed, and his left side was to me. * * * I asked him what he had to say for himself, and he said nothing. I don't know whether or not I fired just then."

Apart from the defense of insanity, defendant was on the undisputed evidence, including his own testimony, guilty of willful murder.—*Parrish v. State,* 139 Ala. 16, 52, 36 South. 1012; *Rogers v. State,* 117 Ala. 9, 22 South. 666. Such offenses as those which inspired this killing, however reprehensible and exasperating, are no justification in law, and cannot suffice to reduce the homicide below the grade of murder. No one can constitute himself the judge and executioner of even a wicked and worthless man, except that he become himself a murderer and answerable for his crime at the bar of justice.

The only real issue of fact before the jury was whether defendant was so unsound of mind as to render him legally irresponsible for the homicide. The evidence adduced in his behalf on that issue was from the mouths of his nearest relatives, and would scarcely have satisfied the jury of the truth of the plea. Nevertheless, defendant was entitled to a fair consideration of the entire evidence, and to a proper instruction to the jury as to the burden and measure of proof, on the issue of insanity.

After stating to the jury the general nature of the issue, the trial judge instructed them, ex mero motu, that "the burden is cast upon the defendant to clearly prove to the reasonable satisfaction of the jury he is

[Smith v. The State.]

mentally incapable and irresponsible for his criminal acts. * * * [And] if, after considering all the evidence, that tending to show insanity as well as that tending to show sanity, with the presumption the law indulges as to every person who has reached the age of legal responsibility as to his acts, the jury should have *a reasonable doubt* as to whether or not the defendant is insane, then you need not consider further the defendant's plea of not guilty by reason of insanity, but may pass to the other issue joined on the defendant's plea of not guilty." The latter clause of the charge, as above quoted, was duly excepted to by defendant. It was clearly erroneous, and, as we are unable to say that it did not affect the verdict, it must work a reversal of the judgment. The statute (Cr. Code, § 7175) requires that "the defense of insanity in all criminal prosecutions shall be clearly proved to the reasonable satisfaction of the jury," as correctly stated in the first clause of the charge. The latter clause exacted of defendant a far higher measure of proof than the law requires, since it authorized the jury to disregard the plea if they entertained a reasonable doubt of defendant's insanity— thus requiring him to prove his insanity beyond a reasonable doubt. This is contrary to the statute and to the whole current of our decisions on the subject.—*Ford v. State,* 71 Ala. 385; *Maxwell v. State,* 89 Ala. 150, 7 South. 824; *Lide v. State,* 133 Ala. 63, 31 South. 953.

It cannot be fairly said that a later repetition of the correct rule in the oral charge or in written charges, given at defendant's request, neutralized the effect of the language excepted to; for the natural interpretation to be given to the whole was that the erroneous statement was the court's exposition of what was meant by clear proof to their reasonable satisfaction. And, in-

deed, it was the duty of the jury to thus reconcile all of the instructions given them.

There was no material dispute as to the time, mode, manner, or circumstances of the killing; nor was there any real necessity, on defendant's own testimony, for an ocular demonstration to the jury of the number, location, and range of the bullets by the use of the clothing worn by deceased at the time he was shot. Yet these garments served to illustrate, by the bullet holes shown, some material features of the evidence, and their admission in evidence was not erroneous. This subject has been recently and fully discussed in the case of *Rollings v. State,* 160 Ala. 82, 49 South. 329, where the authorities are reviewed.

While that feature of the matter would not ordinarily be a ground for reversal, we are at a loss to understand why the witness was allowed to demonstrate to the jury the appearance and condition of the clothing in respect of matters equally open to their perception and knowledge; as, for example, where the bullets entered, and how many holes there were. Such a practice ought not to be approved unless there are special reasons for its indulgence.

Any intelligent and mature witness may ordinarily be allowed to state that visible wounds observed by him are gunshot wounds, for the matter is, in general, one of common knowledge. But, without the special knowledge of an expert, a witness cannot state that such wounds are made by a bullet of a particular caliber. There was, however, no dispute about the nature of the wounds; and the caliber of the bullet was immaterial, and its improper proof perfectly harmless to defendant.

So, also, it appeared without dispute that defendant was 20 years old at the time of the homicide, and there was no prejudice to defendant in allowing a state's wit-

ness, who did not know his age and had only known him a few years, to estimate his age to be 21 or 22. The witness was not qualified to testify to defendant's age, and his opinion on a matter equally perceptible to the jury should not have been received. But it was manifestly harmless.

On the cross-examination of defendant's brother, Homer Smith, who had testified to defendant's manifestations of mental aberration prior to the killing, and also that in his opinion he was not then in his right mind, the state was allowed to question him as to conversations had on that subject between the witness and his mother and sister. Such conversations were, of course, not competent as original evidence, but they were very clearly competent, on cross-examination, to test the value of his opinion by showing the sources to which it might in part be ascribed, and the influences which may have moulded it.

In any view, it could not have prejudiced defendant, since the statements of his mother and sister, as quoted by the witness, merely corroborated what they testified to as witnesses.

The fact that defendant, while serving in the navy, often sent part of his wages to his sister for the support of her and her children, was not relevant to any issue in the case, and was properly excluded.

What defendant said and did just after the killing was all clearly relevant to the issue of insanity, and some of the matters were relevant also to the general issue. They were properly admitted.

A reasonable doubt of the guilt *or innocence*, as a postulate for an acquittal, exhibits a useless confusion of thought, and charges 5 and 7 requested by defendant in that form were properly refused.—*Winter v. State*, 132 Ala. 32, 31 South. 717, charge 4.

Charge 13 has been several times condemned by this court as argumentative, and it was properly refused. —*Watkins v. State,* 133 Ala. 92, 32 South. 627; *Spraggins v. State,* 139 Ala. 93, 35 South. 1000.

Charge 16, though its verbiage may be subject to hypercriticism, is a correct statement of the law.—*Hunt v. State,* 135 Ala. 1, 33 South. 329; *Stewart v. State,* 133 Ala. 105, 31 South. 944.

Its refusal was not error however, since it was satisfactorily covered by given charges 3 and 4.

"Lack of ease, uneasiness, distress, trouble, trial, etc.," are often symptoms or causes of mental disease, but are not mental disease per se, in any legal sense, as asserted by charge A1. The charge invaded the province of the jury, and was for this reason, not to mention any other, properly refused. .

Charges A1, D1, E1, and X2 are all radically defective in omitting, as an essential condition to irresponsibility by reason of inability to refrain from doing the act, the predicate that such inability is the product solely of mental disease.—*Parsons v. State,* 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193.

E1 also singles out evidence for the consideration of the jury.

Charge O3, though morally correct, is a mere homily on jury duty, and was properly refused.

Charge Y2 asserts that a mere insane impulse, controlling the will or judgment, creates criminal irresponsibility, and it was of course properly refused.

The fact that a homicide is 'an off-spring or product of mental disease in the defendant" is deficient as a predicate for criminal irresponsibility, since it omits the essential conditions which lead to that result, as prescribed by our decisions.—*Parsons v. State,* 81 Ala.

[Meadows v. The State.]

577, 2 South. 853, 50 Am. Rep. 192; *Parrish v. State,* 139 Ala. 16, 50, 36 South. 1012.

It is proper to remark that numerous charges were given at defendant's request defining criminal irresponsibility by reason of insanity, which were substantial embodiments of the refused charges, and which were therefore too favorable to defendant upon that issue.

The state's motion to dismiss the appeal must be overruled on the authority of *Campbell v. State, infra,* 62 South. 57, from which the present case cannot be distinguished.

For the errors noted, the judgment will be reversed, and the cause remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.