139 So.2d 321

**Wilmon GOSA**

v.

**STATE of Alabama.**

**6 Div. 650.**

Supreme Court of Alabama.

Sept. 28, 1961.

Rehearing Denied April 5, 1962.

deGraffenried, deGraffenried & deGraff-
enried, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and John
C. Tyson, III, Asst. Atty. Gen., for the
State.

**348**

COLEMAN, Justice.

This is an appeal from a judgment whereby defendant was found guilty of murder in the first degree and sentenced to death by electrocution.

The evidence tended to show that defendant killed his five-year-old daughter by stabbing her. Defendant and his wife had been divorced, remarried, and again divorced. They were living apart at the time of the homicide. Their two children, the deceased daughter and an eleven-year-old son, were living with the mother.

About 5 p. m., January 27, 1959, when it was beginning to get dark, defendant came to the front door of the mother's house. She saw defendant through glass in the door. He "was ramming at the door." The mother told the children to follow her out the back door. The girl went back in the house and the boy followed the mother who heard the girl calling. The mother went to a neighbor's house and called the police. The boy testified that he went back into the house and saw defendant running out the door and the daughter lying on the floor. On returning to the home, the mother found the daughter on her knees in the living room, dead.

The coroner testified that he went to the house about 6 p. m., found the screen door latch pulled loose and on the floor, the bedroom door had been splintered, the closet door was standing open and the jamb behind it was splintered. A blood stained butcher knife was found in the front yard. The knife belonged to the kitchen of defendant's uncle's house where defendant was living and where he ate supper about 5 p. m. on the day of the homicide. The child's body showed one stab wound, extending into the body six or seven inches. The wound severed the breast bone and went through the heart and liver into the stomach. The aorta was severed.

By order of the court dated March 2, 1959, defendant was committed to the State Hospital for the Insane at Mt. Vernon for observation. In April, 1960, the Superintendent of the Hospital and two assistants filed their report, which states in pertinent part as follows:

"After full study and a long period of observation, it is the opinion of each of us separately, and our opinion jointly and collectively, that the said Wilmon Gosa is presently sane and competent. It is also our opinion that he was sane and competent at the time of his admission in Searcy Hospital. It is our further opinion that this patient, at the time of the commission of the crime for which he is charged, had for a period of time been under considerable stress and as a result was abnormally depressed. This depression was evidenced by some concern about continuing to live under what he considered extremely stressful circumstances, that is being separated from his wife and children. There is some evidence in the history that he considered ending his life and there is further evidence that immediately after the commitment of the act for which he is charged, he seemed little concerned about what would happen to him. There is further the history of his drinking rubbing alcohol and a mouth wash preparation prior to his visit to his wife's home and the commitment of the act for which he is charged. While this Commission

did not have a chance to observe or examine the patient shortly before he committed the act or immediately after, it is impossible to state positively that there is exhibited mental illness at the time; however, examination and interviews with the patient do*es* bring in our mind strongly the possibility of the existence of an abnormally disturbed mental state at the time of the commission of the crime. We do feel, as stated above, that he presently is sane and competent."

On the night of the homicide, and shortly thereafter, defendant wrecked his automobile and was hospitalized. A deputy sheriff testified that defendant said he was trying to get away and that he had stabbed his daughter for "revenge from his wife," and that defendant also told the deputy that defendant had been drinking rubbing alcohol, "about half a bottle," on the night of the homicide. A week or two later defendant was again hospitalized with a head injury, allegedly caused by attempted suicide.

Defendant offered evidence to show that his general reputation was good. Defendant testified concerning his military service, his marriage, his divorces and his work.

He testified that on the day he was arrested he worked, that he was worried about something, that he had been concerned about his former wife and children and had financial problems, that after work that day he went to his uncle's house, that he did not know whether he tried to eat, that he did not think he ate anything, that he did remember drinking a pint of rubbing alcohol and a pint and a half of mouthwash, and that he remembered nothing after drinking the alcohol and antiseptic until he was in a jail cell where some man asked defendant "Did you go to your daughter's funeral?"

On cross-examination, defendant testified that he did not remember anything about being at the hospital, or talking to a deputy sheriff who had testified as to a statement made by defendant, or signing his name to a statement, or making a statement, or the night his daughter met her death, or leaving his place of employment that day. In the record of the cross-examination of defendant the following appears:

"Q. What you are trying to do, Wilmon, is to come up here today and play crazy so these gentlemen won't send you to the electric chair, isn't that what you are trying to do?

"Mr. Edward deGraffenried: We object to that statement. It was not a question. It was a statement.

"Mr. Nicol: It is cross examination.

"Mr. deGraffenried: And we want to move to exclude it. First, I want to object to that. We object to it, and move to exclude that statement from the jury. Illegal and prejudicial for the Solicitor to make such a statement.

"The Court: Overruled.

"Mr. deGraffenried: We except. And then we also make a motion for a mistrial on the strength of that statement being highly prejudicial, and cannot be completely removed from the jurors' mind.

"The Court: Overruled.

"Mr. deGraffenried: We except.

"Q. You told Mr. Evans over there in the jail, then, you did not want to die, didn't you? A. I don't remember telling anyone that."

Defendant argues that the court erred in overruling appellant's motion for a mistrial based on the "highly prejudicial questions or statements made by the solicitor" to the defendant.

 The question objected to was not answered. The rule is that improper questions not answered are harmless. Plant v. State, 140 Ala. 52, 37 So. 159; Strickland v. State, 269 Ala. 573, 114 So.2d 407. If the question be regarded as a statement, as appellant insists, it does not assume the

existence of an independent fact as did the question in Wright v. State, 247 Ala. 180, 23 So.2d 519, where the question tended to show defendant's conviction of a separate offense. In Bell v. State, 140 Ala. 57, 37 So. 281, 283, it was held not improper cross-examination to ask defendant's father: "Has the defendant ever been crazy?", and "Is the defendant crazy now?" In Miller v. State, 21 Ala.App. 495, 109 So. 528, it was held not error to ask a witness, on cross-examination, if he had not faked sickness in order to keep from being brought to trial, where the answers were favorable to defendant and the solicitor withdrew the questions. In the case at bar, defendant was asked if he was not trying to "play crazy," in other words, to fake insanity, and the question was not answered. Defendant had elected to testify. He had placed his sanity in issue. He had repeatedly testified that he did not remember events at the time of the homicide but remembered events before and afterwards. We think it was not improper on cross-examination to ask him whether his symptoms of insanity were pretended instead of real. We are of opinion that error cannot be predicated on the denial of the motion for mistrial or on overruling the motion to exclude the question.

■ Counsel for defendant insist that the great preponderance of the evidence clearly established that defendant was so intoxicated that he was unable to form the intent, deliberation, or premeditation necessary to constitute murder in the first degree, and, therefore, under Easley v. State, 246 Ala. 359, 20 So.2d 519, it is our duty to reverse on the ground that the great weight of the evidence goes to show that the punishment is excessive. We are of opinion that the evidence of drunkenness in this case was sufficient to make a question for the jury as to whether defendant was so intoxicated as to be incapable of forming a specific intent essential to a malicious killing so as to reduce the killing to manslaughter or murder in the second degree. Helms v. State, 254 Ala. 14, 47 So.2d 276.

■ Assignment 19 is predicated on an exception to the court's oral charge and takes the point that the part of the oral charge excepted to failed to instruct that drunkenness may reduce the degree of homicide. We are of opinion that the deficiency in the oral charge was supplied by Charges 27, 28, 28A, 39, and 41, and perhaps others, which were given at defendant's request, and that Assignment 19 is not well taken.

Assignments 23 and 24 are based on an exception to a part of the oral charge wherein the court instructed the jury that if the facts were like the State claimed, then a verdict of murder in the first degree would be justified. The defendant argues that the part of the charge excepted to "is misleading in that it seems to eliminate the defense of insanity or intoxication to the charge of murder."

■■ The rule is well established that where a portion of the oral charge is erroneous, the whole charge may be looked to and the entire charge must be construed together to see if there be reversible error. Wright v. State, 269 Ala. 131, 111 So.2d 596. Looking to the entire charge here, we find that the portion here excepted to followed statements wherein the court outlined separately the respective contentions of the State and of the defendant. After stating the acts which the State claimed defendant had done, the court said to the jury, inter alia, "And the State claims that he did that after premeditation and deliberation." The court had further stated the contention of defendant, inter alia, "that his mind had become weakened through disease * * * that he got this rubbing alcohol and drank it, and that he did not realize the nature of the act * * * that he was so far affected by his diseased mind that he did not realize that he was doing an act of that kind * * *." On consideration of the entire charge we are of opinion that the portion of the charge excepted to did not eliminate the defense of insanity or intoxication and that the exception is not well taken.

Refused Charges 16 and 21 are substantially the same as Charge Y2 which was held bad in Smith v. State, 182 Ala. 38, 62 So. 184, and were correctly refused.

Charge 20 was correctly refused. See Charges 1 and 4 which were held bad in Braham v. State, 143 Ala. 28, 38 So. 919.

■ Charges 24 and 43, if correct statements of the law, were covered by the oral charge and their refusal was not error.

Charge 25 is bad and was correctly refused. See Charge 2 in Porter v. State, 140 Ala. 87, 37 So. 81.

Charge 26 is bad and was correctly refused. Reynolds v. State, 154 Ala. 14, 45 So. 894; French v. State, 25 Ala.App. 53, 141 So. 713.

Refused Charges 30, 31, and 32 recite as follows:

"30. I Charge you, gentlemen of the jury, that if you believe from all of the evidence that the defendant, Wilmon Gosa, at the time he is said to have stabbed Shelia Gosa, was so drunk that he was incapable of forming the purpose to do a voluntary act, then he cannot be convicted of any offense higher than Manslaughter in Second Degree.

"31. I charge you, gentlemen of the jury, that if you believe from all of the evidence that the defendant, Wilmon Gosa, at the time he is said to have stabbed Shelia Gosa was so drunk that he was incapable of forming the *pru-pose* to do a voluntary act, then he cannot be convicted of any offense *highter* than Manslaughter in First Degree.

"32. I charge you, gentlemen of the jury, that if you believe from all of the evidence that the defendant, Wilmon Gosa, at the time he is said to have stabbed the deceased, was so drunk that he was incapable of forming the purpose to do a voluntary act, then he cannot be convicted of any offense

higher than Murder in Second Degree."

Charge 30 was held bad in Ellis v. State, 246 Ala. 300, 20 So.2d 512, and was correctly refused.

■ Charge 31 is identical with Charge 30 except that Charge 31 applies to manslaughter in the first degree. Charge 30 was held good in Heninburg v. State, 151 Ala. 26, 43 So. 959, and Hill v. State, 9 Ala. App. 7, 64 So. 163, and later held bad in Cagle v. State, 211 Ala. 346, 100 So. 318, and Ellis v. State, supra. Charge 30 was held bad because it permits drunkenness to reduce homicide to manslaughter in the second degree, whereas the correct rule in this jurisdiction is that drunkenness may reduce the degree of the homicide from murder to manslaughter but is no defense as to either degree of manslaughter; Cagle v. State, supra; Laws v. State, 144 Ala. 118, 42 So. 40. Charge 31, however, does not contain this fault. We are nevertheless of opinion that Charge 31 was refused without error because it is misleading.

■ Charge 31 declares that defendant cannot be convicted of any offense higher than manslaughter in the first degree if he was incapable of "forming the purpose" to do a voluntary act. The words "forming the purpose" are misleading. Purpose and design are synonymous; Webster's New International Dictionary, 1925, page 1739; Roush v. Patton, 30 Ohio App. 328, 165 N.E. 363; and "forming the purpose" is equivalent to "forming the design." Charge 31 in effect charges that if defendant was incapable of forming the design to do a voluntary act, he cannot be convicted of murder in the second degree which is an offense higher than manslaughter in the first degree.

In Wilson v. State, 128 Ala. 17, 29 So. 569, this court held it was not error to refuse the following charge, to wit:

" * * * '(e) The court charges the jury that unless you believe from the evidence, beyond a reasonable

doubt, that the defendant killed the deceased with malice aforethought, and under a formed design, you cannot convict the defendant of murder in either degree. * * * ' " (128 Ala. 17, 21, 29 So. 569, 570);

because the term "formed design" is misleading. The court said:

"The term 'formed design,' employed in charge 'e' has sometimes, even by this court, been deemed expressive of the willful, deliberate, premeditated purpose which characterizes murder in the first degree. Mitchell v. State, 60 Ala. 26. In more recent cases it has been held that such meaning does not necessarily attach to the term. See Hornsby v. State, 94 Ala. 55, 10 South 522; Martin v. State, 119 Ala. 1, 25 South 255; Miller v. State, 107 Ala. 40, 19 South 37. A term giving rise to views so divergent would probably have confused the jury, and misled them to believe that premeditation was a necessary ingredient of murder in the second degree, whereas malice which may arise on the instant, and without deliberation, when concurring with an intention to kill, may constitute that offense. Gilmore v. State [126 Ala. 20, 28 So. 595], and Martin's Case, supra." 128 Ala. 17, 26, 29 So. 569, 572.

The term "forming the purpose" is subject to the same criticism. The jury might be led to believe that defendant could not be convicted of murder in the second degree unless he was capable of premeditation, and, therefore, refusal of Charge 31 was not error.

We find no fault in Charge 32 but its refusal was not error because it was fairly covered by Given Charge 41.

Charge 36 is bad and was correctly refused. Cagle v. State, supra; Ellis v. State, supra.

Charge 40 was fairly covered by the oral charge.

 Charge 42 recites as follows:

"42. The Court charges the jury that if they believe from all of the evidence in the case that the defendant at the time of the homicide was too drunk to form a design to take the life of the deceased, then you cannot find the defendant guilty of murder in the second degree."

The words "form a design" render Charge 42 misleading for the same reason that Charge 31 is misleading. Wilson v. State, supra; Davis v. State, 209 Ala. 409, 96 So. 187.

As is required of us, we have carefully examined the entire record and are of opinion that reversible error does not appear. It follows that the judgment appealed from is due to be and is affirmed.

Affirmed.

All the Justices concur.