WHITE, Circuit Judge.
The appellant was charged by an indictment returned by the Grand Jury of Tuscaloosa County, Alabama, with the criminal offense of murder first degree. He was represented by the Public Defender and was tried on March 20 and 21, 1975, which trial resulted in a jury verdict of guilty of murder first degree and punishment of life imprisonment. The trial court then sentenced the appellant in accordance with the jury verdict.
Robert B. Johnson, a state toxicologist, testified that he performed a postmortem examination of the body of the deceased, John W. Thomas, on September 16, 1974, and that in his opinion, Thomas died from shock and hemorrhage associated with a shotgun blast to his right flank.
Betty Steele, Robert Hyche, Barbara Myers and Jo Ann Bankhead each testified for the State and all gave substantially the same version of the events which led to the death of John W. Thomas, which was as follows: They recalled that they, as well as the appellant and Louis Bankhead, were visiting in the living room of Miss Bank-head's three-room house in Northport on the afternoon of September 15, 1974, when John W. Thomas, accompanied by Wayne Sudduth, arrived on the scene. Thomas was driving an automobile which he parked in the street in front of Jo Ann Bankhead’s house before proceeding into her living room. Thomas was intoxicated and was bare chested when he arrived in the presence of these witnesses. Upon entering the Bankhead living room, Thomas approached the appellant and insisted that the appellant pay him a dollar. The appellant handed Thomas a dollar, and Thomas slapped the appellant a couple of times. Thomas then exited through the front door of the house and went to his car. The appellant went from the living room to the bedroom where he got a shotgun and live shell. Jo Ann Bankhead and Barbara Myers followed appellant into the bedroom and tried to stop him from leaving with the shotgun. Appellant, with the shotgun in his hands, went from the bedroom, through the kitchen, out the back door and around the house to the street where he confronted Thomas, who had just gotten into the driver’s seat of his *157 car. Appellant stuck the shotgun into the open window on the passenger’s side of the car and fired it once. Louis Bankhead then approached appellant and took the shotgun from him and carried it back into the Bank-head house. Appellant then left the area before the police or the ambulance arrived.
Adolph South, a detective with the Tuscaloosa Police Department, testified that he, accompanied by the Sheriffs of Tuscaloosa County and Fayette County, and two other police officers went to a small community in Fayette County the next day where he found the appellant. He further testified that appellant ran from these police officers when he first saw them but was apprehended shortly.
Jerry Myers, the husband of Barbara Myers, testified for the appellant that he had known John W. Thomas for eight years and that John W. Thomas had a reputation for being a violent man, and that Thomas generally carried a pocket knife.
The appellant then took the witness stand in his own behalf and related that he and Louis Bankhead had gone to Jo Ann Bank-head’s house together on the afternoon of September 15, 1974. He said that they had been there for about an hour when John W. Thomas arrived and demanded that appellant pay him a dollar. Appellant contended that he handed Thomas a dollar he had just borrowed from Jo Ann Bankhead and that Thomas then kicked a can of beer appellant was drinking, picked the beer can up and drank from it, and then slapped appellant twice. Appellant said that Thomas told him in a low voice, while he was slapping him that he was going to kill him. Appellant stated that Thomas then turned and walked rapidly out of the house and got into his car. Appellant related that he then got a shotgun and shell from the bedroom and followed Thomas to his car where Thomas again threatened to kill him. Appellant stated that Thomas reached for something under the car seat at which time the gun, which was pointed at Thomas’ legs, discharged and shot Thomas in the side.
On cross-examination of the appellant, the following transpired:
“Q. I understand why you came out of the back. My question is, why did you go from the back and run up toward John Thomas’s car instead of running back this way (indicating) in the opposite direction?
“Mr. Burroughs: We object.
“The Court: Well, this is cross-examination.
“Mr. Burroughs: He is asking him for an uncommunicated mental operation.
“The Court: I still overrule your objection.
“Mr. Burroughs: We respectfully except, if your Honor please.
“Mr. Andres: I mean, you did not run in the opposite direction, did you?
“The Witness: It is a possibility, I could have walked out the—
“Q. Just answer my question. You did not run in the opposite direction, did you?
“A. What opposite direction?
“Q. Well, in the opposite direction of John Thomas’s car?
“A. I did not go out the front door and run straight there, no.”
The appellant cites as error the trial court’s overruling of his objection to the State’s question above which called for an uncommunicated mental operation on the part of the appellant. The appellant further insists that the trial court’s ruling was error despite the fact that the appellant never answered the question to which he objected. Evidence of an uncommuni-cated mental operation which is material to the issues at hand is admissible in Alabama. Starr v. Starr, 293 Ala. 204, 301 So.2d 78; Thornton v. State, 55 Ala.App. 462, 316 So.2d 710; Raybon v. State, 55 Ala.App. 143, 313 So.2d 570. This question and its answer, had it been answered, would certainly have been material to the issues of whether or not the appellant entered into the difficulty with Thomas willingly and whether or not the appellant could have retreated and extricated himself from his peril, in regard to his plea of self defense.
*158 The appellant next cites as error a portion of the trial court’s introduction to its oral charge where the court remarked that the case was important “because it is important to the family of the deceased— his lips have been closed by death; a life has been taken; a man is on trial for that. And a crime has been committed against the citizens of Tuscaloosa County, Alabama”. At the close of the trial court’s entire oral charge, the appellant duly excepted to that portion of the charge quoted above and asked that the trial court clarify its remarks through further instructions. The trial court granted appellant’s request for further instructions and instructed the jury that if they were satisfied that the appellant killed in self-defense that no crime had been committed. In the body of the oral charge, the court carefully instructed the jury that the State had the burden of proving, beyond a reasonable doubt, each and every element of some crime encompassed in the indictment before they would be justified in finding the appellant guilty of anything. The jury was carefully instructed about appellant’s being presumed innocent until proven guilty beyond a reasonable doubt. The trial court also instructed the jury with preciseness concerning the law of self-defense in Alabama. In addition, the court emphasized in its oral charge that the appellant was entitled to a fair and impartial trial and that the jury should not allow prejudice against any party or sympathy for any party influence its verdict. When the entire oral charge is examined, it is clear that appellant was not prejudiced by the remarks to which exception was taken. Gosa v. State, 273 Ala. 346, 139 So.2d 321; Wright v. State, 269 Ala. 131, 111 So.2d 596.
We have carefully examined the entire record as required by law and find no error therein.
The foregoing opinion was prepared by Hon. Jerry M. White, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code of Alabama 1940, (Recompiled 1958); the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
All the Judges concur.