## Wilson v. The State.

*Indictment for Murder.*

1. *Homicide; trial and its incidents; variance between original indictment and copy served on defendant.*—In a prosecution for a capital felony, a variance between the original indictment and the copy served on the defendant, which is not called to the attention of the court and properly objected to before the trial is entered upon, constitutes no ground for the reversal of the judgment on appeal.

2. *Same; same; same; case at bar.*—On a trial under an indictment for murder, a motion for a continuance, on the ground "that no true copy of the indictment preferred against this defendant has been served upon this defendant as required by law," does not raise the objection that on the copy of the indictment served upon the defendant there was omitted the indorsement "A true bill" made by the foreman of the grand jury on the original indictment.

3. *Homicide; evidence; admissibility of part of the garments worn by deceased when shot.*—On a trial under an indictment for murder, where it is shown that the deceased was killed by being shot with a shot gun, a piece of the dress, which was pierced by the shot, after being identified as having been worn by the deceased at the time she was shot, is admissible in evidence.

4. *Same; same.*—On a trial under an indictment for murder, the testimony of a witness that he was going to kill the deceased is admissible in evidence; and the objection to the admissibility of such testimony that there was no sufficient

2

[Wilson v. The State.]

predicate laid for the introduction of such testimony by show-ing that the statement was voluntarily made, is untenable.

5. *Same; same.*—On a trial under an indictment for murder, a question calling upon a witness to state a conversation he testified he had with the deceased the morning before the killing, without its being shown that the conversation called for had any relevancy to any of the issues involved, is properly disallowed upon objection on the part of the State.

6. *Same; charge as to circumstantial evidence.*—On a trial under an indictment for murder, where the evidence connecting the defendant with the killing is in no way circumstantial, but is direct, positive and undisputed, a charge requested by the defendant instructing the jury as to what was necessary to authorize a conviction upon circumstantial evidence, is properly refused.

7. *Same; charges as to bringing on difficulty, and as to the duty to retreat.*—On a trial under an indictment for murder. where there is evidence introduced for the defendant tend-ing to show self-defense, charges requested by the defendant which ignore the question as to the defendant's freedom from fault in bringing on the difficulty, and the defendant's duty to retreat, are erroneous and properly refused.

8. *Same; charge as to murder.*—On a trial under an indictment for murder, a charge which instructs the jury that unless they "believe from the evidence beyond a reasonable doubt that the defendant killed the deceased with malice afore-thought and under a formed design, they can not convict the defendant of murder in either degree," is properly refused, as having a tendency to mislead and confuse the jury.

9. *Same; same.*—On a trial under an indictment for murder, a charge which after instructing the jury what was necessary to authorize a conviction of murder in either degree, then proceeds, "and after considering all the evidence the jury have a reasonable doubt as to defendant's guilt of man-slaughter arising out of any part of the evidence, then you should find the defendant not guilty of any offense," is erroneous and properly refused, the omission of the word "if," converting the part of the charge quoted into the improper assertion that "the jury have a reasonable doubt," etc.

10. *Same; trial and indictments; receiving verdict of jury.*—On a trial under an indictment for murder, where, after consider-ing all the evidence, the jury returns a verdict in which they "find the defendant guilty of murder as charged in the in-dictment and fix the penalty at imprisonment for life," it is proper for the court, before the jury is discharged and

disperses, to decline to receive such incompleted verdict, and to instruct them that they must ascertain by their verdict of what degree of murder they find the defendant guilty.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. J. C. RICHARDSON.

The appellant, Robert Wilson, was tried under the following indictment: "The grand jury of said county charge that before the finding of this indictment, Robert Wilson, alias Duncan, unlawfully and with malice aforethought killed Clarissa King, alias Clara King, alias Cain, by shooting her with a gun, against the peace and dignity of the State of Alabama." The defendant was convicted of murder in the first degree and sentenced to the penitentiary for life.

Upon the cause being called for trial, the defendant moved the court for a continuance and objected to being put upon trial on the ground, that no true copy of the indictment preferred against this defendant has been served upon this defendant as required by law. The facts shown upon the hearing of this motion are set forth in the opinion. The court overruled the motion, and the defendant duly excepted.

The defendant moved to quash the indictment upon the following grounds: 1. "Said indictment fails to charge any offense against the laws of the State of Alabama. 2d. The said indictment charges that the defendant with malice aforethought killed Clarissa, alias Clara King, alias Cain, by shooting her with a gun. 3d. The said indictment fails to allege that the defendant with malice aforethought killed Clarissa, alias Clara King, alias Cain, by shooting her with a gun." This motion was overruled, and the defendant duly excepted. Thereupon the defendant demurred to the indictment upon the following grounds: "Said indictment fails to charge any offense against the laws of the State of Alabama. 2d. Said indictment fails to allege that with malice aforethought the defendant killed the deceased Clarissa, alias Clara King, alias Cain. 3d. Said indictment fails to allege that the defendant unlawfully and with malice aforethought killed Clarissa, alias Clara King, alias Cain, by shooting her with a gun. 4th.

Said indictment fails to charge any offense against the laws of the State of Alabama." This demurrer was overruled, and the defendant duly excepted.

The tendencies of the evidence for the State and for the defendant are shown in the opinion. The State introduced as a witness Dr. N. G. James, who testified that he was called to see Clarissa King, the deceased, a short time after she was shot; that she died about a half hour after he saw her, and that her death was caused from a gunshot wound. This witness further testified that while he was tending the deceased and while she was lying on the bed, he cut off that part of the dress worn by her that the shot passed through, and upon being shown the piece of cloth with a round hole in it, the witness identified it as being the piece he had cut from the dress of the deceased; and further testified that it was in the same condition as at the time he cut it off the dress and that it had remained continuously in his possession from that time to the time of the trial. Upon the solicitor offering said piece of the dress in evidence, the defendant objected on the ground that it was not shown that the said piece of cloth was in the same condition as at the time the deceased was shot, nor in whose possession it had been since the deceased was shot. The court overruled the objection, and the defendant duly excepted.

Upon the introduction of one W. F. Meadows, a witness for the State, he testified that a short time before Clarissa King was killed, he had a conversation with the defendant, and that the defendant stated to him that he had a fuss with Clarissa King and he was going to blow her brains out. Upon the witness remonstrating with him and telling him not to do so, that it would get him into trouble, the defendant turned from him and said: "I am going to do it." The defendant moved to exclude that testimony, as to the conversation of the witness with the defendant, upon the ground that no sufficient predicate, showing that the statement was voluntary, had been laid to authorize the introduction of this testimony. The court overruled the motion, and the defendant duly excepted.

Upon the introduction of one Harry McCord, as a witness for the defendant, he testified that he remembered the morning upon which the deceased was killed, and that he knew both the defendant and the deceased, and that he had a conversation with deceased the morning before she was shot. The defendant then asked the witness to "state the conversation he had with the deceased." The solicitor objected to this question upon the ground that it was too indefinite in that the conversation called for was not shown in any way, to relate to the defendant or this case. The court sustained the objection, and the defendant duly excepted.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (A.) "The court charges the jury that although the facts and circumstances in this case may be strong enough to prove, beyond a reasonable doubt, every material link in the chain of evidence, save one, necessary to show the guilt of the defendant, yet if the jury have a reasonable doubt issuing out of the evidence, as to the truth of this one link, you must acquit the defendant." (B.) "The court charges the jury that self-defense is the resistance of force, as seriously threatened force actually impending, by force sufficient to repel the danger." (E.) "The court charges the jury that unless you believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased with malice aforethought and under a formed design, you cannot convict the defendant of murder in either degree." (F.) "The court charges the jury that if you have a reasonable doubt as to whether the killing was done deliberately or whether it was done premeditatedly, then you can not find the defendant guilty of murder in the first degree; and if you have a reasonable doubt as to whether the killing was done in malice, then you can not find the defendant guilty in either degree, but only of manslaughter in the first degree at most; and after considering all the evidence, the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then you should find the defend-

ant not guilty of any offense." (G.) "The court charges the jury that if the defendant was the agressor and the sole cause of the difficulty in which the deceased was killed, yet if you believe from the evidence that he retreated, or attempted to retreat, and was thereby apparently placed in such position as he was in danger of losing his life or of receiving grievous bodily harm, he had the right to use such force to repel this danger, even though he had to kill the deceased to do so."

The bill of exceptions contains the following recitals as to the rendering of the verdict by the jury: "After the jury had received all the instructions of the court, they retired to consider their verdict. The next day the jury came into open court, and the defendant and his attorney being present, the presiding judge asked the jury if they had agreed upon a verdict; and one of the jury answered that they had. The presiding judge said: 'Receive and read the verdict, Mr. Clerk.' The clerk read the words: 'We, the jury, find the defendant guilty of murder as charged in the indictment, and fix the penalty at imprisonment for life. A. F. Brooks, Foreman.' Immediately upon the clerk's reading said words, one of the attorneys of the defendant demanded that the jury be polled, which was done in compliance with said demand. Thereupon the court said to the jury: 'Gentlemen, you may walk down for a few moments. No, hold on, let me see that verdict, Mr. Clerk.' The clerk than handed the indictment, which had the verdict written on its back, to the judge, and the judge handed the indictment to the jury and said: '(Gentlemen, the law requires that if you find a defendant guilty under an indictment for murder, you must ascertain by your verdict the degree of the criminal homicide, if murder, whether in the first or second degree; retire, gentlemen, and consider your verdict.' The jury then retired to their jury room to consider their verdict. The jury had never dispersed, nor had any one of the jury left the immediate presence of the court from the time of the bringing in of their verdict above set out until they retired into the jury room to again consider their verdict as directed by the court.

The defendant objected to the jury being sent back into the jury room to again consider their verdict, and objected to the jurys being sent back to their jury room in order to correct their verdict, and assigned as ground of objection: That the jury had been discharged and had no right to correct the verdict. The court overruled the objections of the defendant, and the defendant duly excepted to the overruling of his said objections. After the jury had retired to the jury room and again considered their verdict, they returned into the court their verdict, viz.: 'We, the jury, find the defendant guilty of murder in the first degree, and fix the penalty at imprisonment for life.' "

After the verdict as last set forth was returned, the defendant moved the court in arrest of judgment, upon the grounds that the verdict of the jury rendered in the cause failed to ascertain the degree of murder of which he was convicted, and further, that the court was without authority to require the jury to retire from the court room after they had been discharged. The court overruled this motion, and the defendant duly excepted.

No counsel marked as appearing for appellant.

CHARLES G. BROWN, Attorney General, for the State. The court did not err in overruling the motion to quash the indictment or the demurrer to the indictment.—2 Bishop New Criminal Procedure, § 681; *Franklin v. State,* 52 Ala. 414; *Haley v. State,* 63 Ala. 89.

Charge A. was properly refused.—*Dent v. State,* 105 Ala. 14; *Green v. State,* 97 Ala. 59; *Grant v. State,* 97 Ala. 36. Charge B. pretermitted the doctrine of freedom from fault and the doctrine of retreat.—*Goodwin v. State,* 102 Ala. 89. Charge E. was confusing and misleading.—*Martin v. State,* 109 Ala. 1. Charge F. was erroneous, and properly refused.—*Evans v. State,* 109 Ala. 14. A motion in arrest of judgment was properly overruled.—*Brown v. State,* 52 Ala. 345; *Sparks v. State,* 59 Ala. 82.

SHARPE, J.—By an indictment naming him as Robert Wilson *alias* Duncan, defendant is charged with the murder of Clarissa, *alias* Clara King, *alias* Cain.

Evidence for the State tended to show that defendant with the declared purpose of killing the deceased hunted her, and shot and killed her while she was hiding from him in a bed. In behalf of the defendant there was evidence tending to show that deceased had made threats against his life, which were communicated to him, that he did not hunt the deceased, but shot her in consequence of an attack she was making on him with a razor, from which he had no other available way to escape. .

The defendant moved to continue the case, and objected to being placed on trial on the ground that no true copy of the indictment preferred had been served on him, as required by law. It appears that the endorsement "A true bill" made by the foreman of the grand jury on the original indictment, was omitted from the writing served on the defendant, while in other respects the two papers correspond literally. The statute provides that such indorsement must be made on an indictment when it is found.—Code, § 5039. When made it is the legal evidence of the finding and return of the grand jury.—*Wesley v. State,* 52 Ala. 182; *Holley v. State,* 75 Ala. 14; *Mose v. State,* 35 Ala. 421; *Hubbard v. State,* 72 Ala. 164. That the foreman's indorsement is intended to furnish such evidence is the reason given for the opinion expressed in the case last cited that "it is the duty of the clerk to furnish for service on the accused an exact and literal copy of the indictment, with all its indorsements." Though the correctness of that opinion be conceded and though it be further conceded that the intimation given in *Mose v. State, supra,* to effect that here, as at common law, the indorsement "billa vera" is essential to give life to an indictment, still in dealing with the motion in question a distinction must be recognized as between the indorsement and the indictment itself. Neither from the motion nor elsewhere does it appear that the trial court's attention was directed to the omission of the indorsement except by the stated ground of the motion which was too general to put the trial court in error for overruling it. A variance between the original indictment and the copy served not properly objected to be-

fore trial is not ground for reversal.—*Ezell v. State,* 54 Ala. 165.

The offense is charged in the Code form which sufficiently covers murder in both and either of its degrees. *Redd v. State,* 68 Ala. 492; *Ward v. State,* 96 Ala. 100. It was permissible to name the defendant under an alias.—*Lee v. State,* 55 Ala. 259; *Haley v. State,* 63 Ala. 89. If the indictment lacks certainty concerning the identity of the person killed, or lacks averment excusing uncertainty in that respect as that person was not otherwise known to the grand jury, than as therein named, such defects might have been available here if they had been made in the trial court. See *Morningstar v. State,* 52 Ala. 405; *Bryant v. State,* 36 Ala. 270. They were not made a ground of objection in either the demurrer, the motion to quash or the motion to arrest judgment, and, therefore, they will be regarded as waived.

There was no error in the rulings on evidence or in the refusal of charges.

The piece of dress pierced by shot, after being identified as having been worn by the deceased just after she was killed, was proper to be looked to as illustrating the location and nature of the wound if for no other purpose.

There is nothing in the objection made to evidence showing threats made by defendant against the deceased.

The question addressed to McCord about a conversation with Clarissa King was properly disallowed, because it was too general to indicate the relevancy of the conversation called for.

. Apart from the obscurity involved in charge A. as to what is meant by its references to doubting the truth of a link in a chain of evidence, the metaphor is inapt as applied to the present case, where the evidence connecting the defendant with the killing does not consist of a chain of circumstances, but is direct, positive, and undisputed.

To be in position to establish self-defense in homicide, the slayer must be free from fault in bringing on and engaging in the immediate difficulty which results

in the killing.     Charges B. and G. both ignore this
principle, and charge B. also ignores the duty of retreat
which, when reasonably practicable, precedes the right
to take the life of an assailant.—*Gilmore v. State,* 126
Ala. 59, and cases there cited.

The term "formed design" employed in charge E.
has sometimes even by this court been deemed express-
ive of the willful, deliberate, premeditated purpose
which characterizes murder in the first degree.—*Mitch-
ell v. State,* 60 Ala. 26.     In more recent cases it has
been held that such meaning does not necessarily at-
tach to the term.     See *Hornsby v. State,* 94 Ala. 55;
*Martin v. State,* 119 Ala. 1; *Miller v. State,* 107 Ala. 40.
A term giving rise to views so divergent would probably
have confused the jury and misled them to believe that
premeditation was a necessary ingredient of murder in
the second degree, whereas malice which may arise on
the instant and without deliberation, when concurring
with an intention to kill, may constitute that offense.
*Gilmore v. State,* and *Martin's case, supra.*

By the omission of the word "if," or its equivalent,
from the last clause of charge "F." what is apparently
intended to state the hypothesis as to reasonable doubt,
is converted into an improper assertion that "the jury
have a reasonable doubt," etc.     Moreover, that clause
seems to improperly confine the inquiry to manslaughter.

It was proper for the court to decline to receive the
verdict until the jury had found and expressed by the
verdict the degree of the offense of which the defendant
was found guilty, and the jury having remained to-
gether undischarged in the presence of the court after
delivering the incomplete verdict, the court but per-
formed its duty in calling their attention to the omis-
sion and in returning them to the jury room for the
purpose of further deliberation.

No reversible error appearing in the record, the
judgment must be affirmed.