(122 So. 45)

**BASS v. STATE.  (4 Div. 383.)**

Supreme Court of Alabama.  Jan. 31, 1929.

Rehearing Denied May 2, 1929.

Farmer, Merrill & Farmer, of Dothan, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

GARDNER, J. Appellant was indicted for the killing of his wife by shooting her with a pistol, and was convicted of murder in the first degree, with the infliction of the death penalty.

He interposed pleas of not guilty, and not guilty by reason of insanity. While there was an eyewitness to the shooting, yet the witness did not identify the defendant, and the state's case connecting defendant with the commission of the crime rested upon circumstantial evidence and incriminatory statements made by defendant, all of which were so cogent and convincing as to fully justify the conclusion of the jury that the defendant fired the fatal shots. No evidence in rebuttal as to this feature of the case was offered by defendant, who did not himself take the witness stand, and it very .clearly appears, as admitted by counsel in brief, that the defense rested for acquittal upon the plea of insanity. Nevertheless, with the plea of not guilty thus interposed, the burden of proof thereon rested upon the state, and justified the admission of evidence having any relevancy thereto as though it constituted a contested issue in the case. "It has been uniformly held in this state, in homicide cases, that the conduct, demeanor, and expressions of the accused, at or about the time of the homicide, are matters admissible in evidence against, but not for him, unless part of the res gestæ." Maddox v. State, 159 Ala. 53, 48 So. 689; Jones v. State, 181 Ala. 63, 61 So. 434.

The killing occurred between 8 and 9 o'clock in the morning. Wilfred Bass, son of defendant, testified for the state. He met his father in the road some distance from their home, and rode with him to Taylor. The evidence tends to show, this was just preceding the shooting, and this witness testified that on this occasion his father, speaking of deceased, "said he was going home and kill her," threw a gun in his face, and told him to get off the car. Witness saw the car stop at his mother's house and in the direction of the house heard a gun, but when he reached home the car was not there, and he found his mother dead. Counsel strenuously insist that the testimony of this witness that defendant threw a gun in his face and made him leave the car was improperly admitted over his timely objection, but we think no argument is necessary to demonstrate this evidence comes well within the long-recognized rule of this court as quoted from Maddox v. State, supra, and that no error was committed in its admission.

We have carefully considered the cases relied upon by counsel for appellant (Henry v. State, 79 Ala. 42; Wilson v. State, 128 Ala. 17, 29 So. 569; Spooney v. State, 217 Ala. 219, 115 So. 308; Nelson v. State, 130 Ala. 83, 30 So. 728), but entertain the view that these authorities do not militate in any manner against the conclusion here reached.

This witness was also allowed to answer, over defendant's objection, the following question: "Did you ever hear your father make any threats against your mother, to kill her?" It is argued the question calls for an opinion of the witness, and was objectionable upon that ground, citing 22 Corpus Juris, 485; Hames v. Brownlee, 63 Ala. 277; Hammond v. State, 154 Ala. 81, 45 So. 654; McConnell v. State, 13 Ala. App. 79, 69 So. 333; Bettis v. State, 160 Ala. 3, 49 So. 781; Husch v. State, 211 Ala. 274, 100 So. 321; Cole v. State, 215 Ala. 432, 110 So. 914, but an examination of these cases discloses they do not involve the question here considered, and are inapplicable. Here the question called for evidence of a collective fact, whether or not his father had threatened to kill his mother, and not an opinion of the witness. If the exact language is desired, it could be ascertained on further examination. The ruling of the court was free from error. 13 Mich. Dig. 690–692.

During the cross-examination of this witness, who was examined at the inception of the trial, in answer to questions by defendant's counsel, he stated defendant was not crazy, "just mean." At this remark, a large number of the audience (the courtroom being crowded with spectators) cheered and gave other evidence of approval. The presiding judge "ex mero motu rose to his feet, reprimanded those of the audience participating in such demonstration, and announced that if such demonstration occurred again he would have the courthouse cleared of all spectators." Counsel for defendant then moved for a withdrawal of the case from the jury and that a mistrial be declared on account of said demonstration, and it is insisted reversible error was committed by the court in overruling this motion.

We fully recognize the duty of the courts to protect an accused against encroachments upon his constitutional right of a fair and impartial trial (Seay v. State, 207 Ala. 453, 93 So. 403), but we are not persuaded there was error in the action of the court in denying a motion for a mistrial. The court acted promptly and evidently effectively with a reprimand, to the audience, as this occurred in the inception of trial and the bill of exceptions contains no hint of any further disorder. We conclude no reversible error here appears. 16 Corpus Juris, 810; Lide v. State, 133 Ala. 43, 31 So. 953.

That deceased was shot both in the breast and in the back was without dispute, and no issue presented on this trial rendered material the exact range of the bullets. Very clearly, therefore, there is nothing in the testimony of the coroner upon this question that

could in any manner prove prejudicial to any substantial rights of defendant.

The defense offered both expert and non-expert testimony as to his insanity, and in rebuttal numerous nonexpert witnesses were examined by the state, and as to each defendant interposed objection that sufficient qualification had not been shown.

As to whether or not a witness possesses such acquaintance with and knowledge of defendant as to be qualified to give his opinion as to his sanity is a question to be determined by the trial court, and, as said in Jones v. State, 181 Ala. 63, 61 So. 434, "The very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, * * * which will not be revised on appeal, except for palpable abuse." No precise rule can be established as to the length or character of acquaintance necessary for qualification. "All we can say is, that the circumstances must be such as to have afforded the opportunity to form an accurate judgment as to the existence or nonexistence of the disease, considered with reference to the character or degree in which it is alleged to exist." Powell v. State, 25 Ala. 21; Nat. Life & Accident Ins. Co. v. Hannon, 214 Ala. 663, 108 So. 575.

We have read and duly considered the testimony as to each of these witnesses, and conclude that no abuse of discretion has been shown in the finding that they possessed sufficient qualification as nonexperts to give their opinion evidence that defendant was sane. In view of the argument of counsel for defendant, we may add that the record does not disclose any objection to the testimony of witness Alex Dorman that in his judgment defendant was sane. The exceptions as to the testimony of this witness relate to conversations had by him with defendant when taking him to the asylum. There was testimony on the part of the state tending to show defendant was feigning insanity. In this conversation, occurring some months before the shooting, defendant had said he was not crazy, but that he was "going up here to keep from going to the penitentiary later." The evidence for the state tended to show defendant had prior to that time threatened to kill his wife, and we think this conversation admissible, its probative force being a question for the jury.

There was no inconsistency in Dorman acting for the county, presumably in the capacity of a deputy, carrying defendant to the asylum, though he entertained for himself the opinion he was sane. It was not incumbent upon him to inject his personal opinion in the execution for others of a purely ministerial duty. There was therefore no error in sustaining objections of the state to questions of this character propounded on cross-examination of this witness by defendant.

The expert witnesses for the defendant testified defendant's insanity was paranoia. In rebuttal the state offered Dr. Carlisle, who qualified as an expert and who had known defendant a number of years and had attended him on several occasions during the period of this inquiry. He testified to his sanity, and we see no objection to permitting the state to further show by this witness that had defendant been suffering with paranoia while under his observation he could have discovered it. The statement made by defendant to Dr. Carlisle to the effect he had deeded all his property to his wife and "wanted to get this property back," and that she would not agree to it, was relevant, in view of all the circumstances, though made 10 or 11 months previous to the killing, as having some tendency to show motive. 16 Corpus Juris, 547; Spicer v. State, 188 Ala. 9, 65 So. 972.

The conversation between defendant and witness Alex Barnes was properly admitted in evidence over defendant's objection. It indicated a motive as well also a purpose on defendant's part to put his wife out of the way. The fact that this conversation was 15 months before the killing does not suffice to destroy its relevancy. Spicer v. State, supra.

What the defendant did and said immediately after the shooting was admissible (Jones v. State, 181 Ala., supra; Maddox v. State, supra), and the court committed no error in admitting the testimony of Archie Evans and Bud Carroll as to what the defendant did and said while at the filling station of Evans on the day the shooting occurred. The jury could infer from the evidence in the case this conversation took place only a short time after the shooting, and while defendant was in flight to the state of Florida, where he was subsequently arrested. Like observations are applicable to the testimony of Lucy Evans and Mansell Snell as to the conduct and language of defendant at their respective places of business on the day of the killing. 16 Corpus Juris, 549; Rollings v. State, 160 Ala. 82, 49 So. 329.

It requires no discussion to disclose the court properly allowed the officers who arrested defendant in Florida to state defendant offered to pay them $100 for his release.

The conversation between defendant and witness Cameron was admissible in support of the state's theory defendant feigned insanity. The testimony of the jailor, Rogers, was admissible as to defendant's conduct in jail, and as tending to show that insanity was feigned. Granberry v. State, 184 Ala. 5, 63 So. 975.

The objection of defendant to statement of the solicitor in argument, that "the plea of insanity is getting popular," was sustained and was not repeated. Error cannot be predicated upon the action of the court in

overruling objection to the further statement of the solicitor that defendant was pleading insanity in this case, as it was a true statement.

■ In commenting upon the testimony of Dr. Moody, the solicitor said: "Dr. Moody testified that the defendant knew the difference between right and wrong, and that he had the will power to choose between right and wrong." To which defendant interposed objection, which was overruled. A reference to Dr. Moody's testimony discloses he did state defendant "had a clear conception between right and wrong," but that he did not know whether he had the volition to choose between right and wrong. The solicitor was only partially incorrect, which may be laid to wide latitude in deducing inferences from Dr. Moody's testimony. The exact language of the witness was available, if any prejudice to defendant was apprehended. As said by this court in Cross v. State, 68 Ala. 476: "We would not embarrass free discussion, or regard the many hasty or exaggerated statements counsel often make in the heat of debate, which cannot, and are not expected to become, factors in the formation of the verdict." Moreover, the objection was broad and to the entire statement and not confined to that portion of the sentence as to which it is insisted the witness was incorrectly quoted. We conclude no reversible error appears as to the argument of the solicitor. Cross v. State, supra; Hobbs v. State, 74 Ala. 39; Ala. Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158; 16 Corpus Juris, 898. See, also, Lide v. State, supra.

We have here considered the several exceptions treated by counsel for appellant in brief, but, mindful of our duty in cases of this character, the record has been carefully examined as to other questions and exceptions. The few remaining questions not argued are of a nature to call for no discussion.

■ We find a motion for new trial in the record, but no ruling thereon. The rule is, under these circumstances, to consider the motion abandoned. Havard McMillan v. State, 218 Ala. 602, 119 So. 652.

■ Something is said in brief of counsel as to the preponderance of the evidence establishing insanity of the defendant. The issue was for the jury, and with that question this court cannot be concerned, as nothing in this record presents the same for review.

Upon due consideration we find no reversible error, and the judgment of the court below will therefore be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, THOMAS, BOULDIN, and FOSTER, JJ., concur.

BROWN, J., not sitting.