159 So.2d 65

**Roscoe A. HOLIFIELD**

v.

**STATE.**

**6 Div. 867.**

Court of Appeals of Alabama.

Oct. 29, 1963.

Rehearing Denied Nov. 19, 1963.

deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, Roscoe A. Holifield, was tried by indictment charging him with murder in the first degree of Roscoe Ragland. The jury returned a verdict finding the appellant guilty of manslaughter in the first degree and he was sentenced by the court to imprisonment in the State penitentiary for a period of ten years, from which he hereby appeals.

The record reveals that the appellant was a middle-aged negro man who, according to the testimony of State's witness Lorene Flores, represented himself to her as an Indian; and that the deceased was a white man of middle-age who had served thirty years in the State penitentiary on a conviction for first degree murder, and who had been released just shortly before he was killed.

Mrs. Lorene Flores, the first witness for the State, stated that she first met the appellant and the deceased near the intersection of U. S. Highway 11 and Highway 5, North of Tuscaloosa, Alabama, while she was hitch-hiking from West Blocton, Alabama, to Helena, Arkansas, when a car being driven by appellant stopped and picked her up, and that the deceased was riding in the front seat of the car with appellant and

that she got in the back seat. Mrs. Flores stated that she was approximately nine months pregnant at the time of the trial, which began on February 8, 1962, and that the homicide took place on December 30, 1961. She also testified that after the appellant and the deceased picked her up, they drove into Tuscaloosa, Alabama, and stopped at a point near the whiskey store in said city and that both appellant and deceased got out of the car and went toward the whiskey store. After the two men returned with "a fifth" of whiskey they proceeded, together with Mrs. Flores, to a cafe known as "Roy's Place", where they stopped and the deceased went in to purchase some barbecue sandwiches while Mrs. Flores remained on the front seat of the car. She testified that the appellant got on the back seat of the car and asked her, "Did that man ask you to go with him?" referring to the deceased, and that she said, "Yes", to which the appellant replied, "Well are you going?", and she said, "No, I don't want to." He said, "Will you go with me?", and she said, "I don't want to go with neither one of you."

According to the witness, after this conversation the deceased returned with the barbecues and the three of them proceeded in the direction of Centerville, Alabama, and after they had travelled about two miles from Tuscaloosa, Alabama, they turned off the highway and went about a quarter of a mile along a road to a dump or a gravel pit where they stopped and the deceased told the appellant to get out of the car and take his gun with him. The appellant did so, and after he left the car, the deceased tried to force her to engage in an act of intercourse, but she resisted and the deceased told her to get out of the car and get in the back seat. She further testified in part as follows:

"He asked me to get out and get in the back seat. Well, I got out, but instead of getting in the back seat at this time, I was leaning over the car crying, and then this, the driver here, told the white man, he said, 'Don't lay a hand on her. Don't hurt her.' He said, 'She is a woman, with her nature, and she is white. If she wants to give over to you, she will. Otherwise, you are not going to hurt her.' They began talking. I opened the back door of the back seat and got in and sat down, and the white man held the door open, and then he started cursing me and calling me all kinds of filthy names, and I did not see what was going on, I was crying, I had my head held down—"

The witness Flores stated that the deceased said, "I have already killed three other women and I just as soon kill you as look at you." At that point, she said the back door slammed shut and she heard something and looked around and saw the deceased falling to the ground and heard him holler, "Roscoe."

Mrs. Flores continued:

"Anyway, the door was closed at that time, and I rolled the glass down and told this man, the driver, if he would not shoot the man, if he would not kill him, I would be willing to go with both of them in order to save the man's life, and the driver said, 'No, you just keep your mouth shut. I have got to make this look good.'

"Q. Now, Mrs. Flores, did you ever hear a gun being fired on that occasion, or state whether or not you ever heard a gun being fired on that occasion.

"A. Well, as I was sitting in the back seat, just as the back door closed, I heard something, and that is when I looked around, and that is when I seen this man fall and holler 'Roscoe'. He hollered 'Roscoe', and I seen the driver shoot this man, the best I remember was three or four times in the stomach and three or four times in the head and three or four times in the legs."

She was then shown a shotgun by the solicitor and she said that it looked like

the gun that the defendant used on that occasion.

The witness Flores testified that after the shooting, she and the appellant drove toward Centerville and that the appellant stopped twice on the way, once to get rid of the whiskey and again at a store to get some aspirin and a Coca Cola for her. She stated that she went in the store where he stopped and stayed about five minutes, but failed to disclose anything about the previous occurrences, and that the appellant then took her to his house to ask his wife about a midwife, as she thought her baby might come at any time.

She said that they then left his house and started in the direction of West Blocton. At this point, Mrs. Flores testified without objection that after they had travelled a short distance, the appellant pulled the car off the road and got in the back seat with her and that they engaged in an act of sexual intercourse, and that after the appellant had finished he gave her $15.00 and told her he wanted her to get a midwife and left her at the home of her friend, Verta Lee Drawhorn, in West Blocton.

Later the court charged this evidence out in effect by giving defendant's charge 22.

She further testified that the next day she went to Centerville, Alabama, where she intended to catch a bus and had not reported the homicide to anyone at this time. After staying at the bus station for about five minutes, she asked someone to take her back to West Blocton and upon arriving there, she reported the incident for the first time to a policeman.

Mr. Robert B. Johnson, Assistant State Toxicologist, testified that, in his opinion, the cause of the death of Roscoe Ragland was several shotgun wounds, which he described as finding about his head and body.

Sheriff Harold Dailey of Bibb County testified that Mr. Herman Glimmer, Police Chief of West Blocton, reported the homicide to him on the Sunday morning following the night of the shooting and that the witness Flores had reported the homicide to Mr. Glimmer the same morning. Sheriff Dailey testified that he made an investigation of the case and that the defendant had made a voluntary statement to him that he had shot the deceased and buried the body in Bibb County. He testified that the defendant then led him and Sheriff Chism of Tuscaloosa County, along with Deputy Miller, to the scene where the body was buried. Sheriff Dailey later testified that the defendant told him that he killed the deceased while he was trying to protect the woman, Mrs. Flores.

Mr. Warren Miller, Chief Deputy Sheriff of Tuscaloosa County, Alabama, testified that he investigated the case along with Sheriff Dailey and that the defendant had made a statement which was taken down on a tape recorder and that the defendant had told him that he shot the deceased in self-defense. Deputy Miller also testified that the appellant had told him in one statement that the deceased had had a pistol that night and that he had discarded the pistol along the highway when he left the scene of the crime, but the pistol was never found.

In defense, the appellant introduced a series of witnesses who testified as to the bad reputation of the deceased for peace and quietude in the community where he resided. The defense also introduced medical testimony as to the defendant's complaint of inability to have a satisfactory sexual intercourse given by Dr. William H. Weatherford, a General Practitioner of Medicine in Bibb County, Alabama.

Appellant assigns as error the sustaining by the court of an objection made by the State to a portion of the opening statement to the jury made by counsel for appellant, which was as follows:

"May I state what I expect to show? I expect to show that he went to see him, that he gave Dr. Weatherford a

history of not being able to have an erection, not being able to have intercourse with anyone and asked Dr. Weatherford for treatment for this condition."

Denial of the privilege to the defense counsel to make an opening statement, or the exclusion of a portion of the opening statement, is discretionary with the trial judge and the lower court will not be put in error for the refusal or exclusion of a portion of the defendant's opening statement if such was not an abuse of discretion. The record does not here show such an abuse of discretion by the trial judge. Burns v. State, 226 Ala. 117, 145 So. 436; Stewart v. State, 245 Ala. 511, 17 So.2d 871; Parsons v. State, 32 Ala.App. 266, 25 So.2d 44; Handley v. State, 214 Ala. 172, 106 So. 692; Pope v. State, 174 Ala. 63, 57 So. 245; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.

The appellant contends that the following questions by the circuit solicitor and/or answers by the witness constituted remarks designed to create race prejudice:

"Q. Had the defendant made any statement to you, Mrs. Flores, with reference to his race or what race he was?

"MR. EDWARD DEGRAFFEN-RIED: We object. Immaterial, irrelevant, and prejudicial.

"A. When I first got in the car—

"THE COURT: Overruled.

"MR. DEGRAFFENRIED: We except.

"Q. Go ahead.

"A. When I first got in the car, after they picked me up, I noticed he was kind of dark, and I asked him, 'what kind of nationality are you?' He said, 'I am Indian.'"

In Davis v. State, 233 Ala. 202, 172 So. 344, reversing 27 Ala.App. 342, 172 So. 343, the court ruled:

"It is not every reference to a defendant as a negro, when he is a negro, that would be improper, though the charge was for an attack on a white man. It should appear that it was so made as to emphasize the difference in races, and thereby to appeal to race prejudice."

To determine whether reference to defendant as a Negro constituted appeal to race prejudice, each case must be decided upon its particular facts. Daniels v. State, 243 Ala. 675, 11 So.2d 756, cert. den. 319 U.S. 755, 63 S.Ct. 1168, 87 L.Ed. 1708; James v. State, 18 Ala.App. 618, 92 So. 909; Johnson v. State, 35 Ala.App. 645, 51 So. 2d 901; Sup.Ct. Rule 45.

The appellant further assigns as error the actions of the court overruling the separate objections made by the defendant to the following statements made by the witness Flores while she was testifying on direct examination:

"Arguing about which one I was going to go with first.

"Q. Did you ever hear the deceased, Roscoe Ragland, threaten the defendant in any way?

"A. No, Sir, I did not."

The appellant contends that the above statements were conclusions and, therefore, inadmissible.

The statement made by Mrs. Flores as to what the deceased and the defendant were arguing about just prior to the homicide is admissible to show motive and as part of the res gestae, and if the exact words are needed counsel for the appellant had ample opportunity to elicit such during cross-examination.

In murder prosecutions, a question as to whether deceased threatened the defendant is not objectionable as calling for an opinion or conclusion of the witness. In Bass v. State, 219 Ala. 282, 122 So. 45, the Supreme Court said:

"[T]he question called for evidence of a collective fact, whether or not his father had threatened to kill his mother, and not an opinion of the witness. If the exact language is desired, it could be ascertained on further examination."

See also Dillard v. State, 27 Ala.App. 50, 165 So. 783; Bass v. State, 219 Ala. 282, 122 So. 45; Davis v. State, 20 Ala.App. 463, 103 So. 73; Wright v. State, 19 Ala.App. 112, 95 So. 335; Ex parte State ex rel. Davis, 207 Ala. 453, 93 So. 501; Higginbotham v. State, 262 Ala. 236, 78 So.2d 637.

■ Appellant further assigns as error the sustaining of an objection of the solicitor by the trial court to the following question asked Mrs. Flores by defense counsel:

"Where have you been since the next day after this thing happened?"

Appellant contends that the defense has a right to show that the chief witness for the prosecution was kept in jail until the day of the trial and that the defense counsel has not had a chance to talk to said witness until a few minutes before the trial began.

The record does not show that a continuance or a recess was asked for to give the defense a chance to examine the State's chief witness, and without such, no error resulted to the defendant. The record, however, fully discloses the fact that the chief witness for the State had been confined in jail and such facts were presented to the jury at length for their consideration. Sup.Ct.Rule 45; Gallman v. State, 29 Ala.App. 264, 195 So. 768; Page v. State, 41 Ala.App. 153, 130 So.2d 220, cert. den. 273 Ala. 5, 130 So.2d 227.

Appellant contends that the trial court erred in refusing to give the following written charges requested by the defense:

"3-A. The court charges the jury that if at the time of the shooting they believe that the defendant was acting in defense of the witness Lorene Flores, and that it was in defense of her that he shot the deceased, then you must acquit the defendant."

"5-A. The court charges the jury that if they believe from the evidence that the defendant was acting in defense of his life, or the life of Lorene Flores at the time of the shooting, then you must find the defendant not guilty."

"23. The Court charges the jury that the defendant in this case is not charged or accused of any acts which occurred after the death of the deceased."

We conclude that the refusal of these charges was plainly without error.

■ The trial court will not be put in error when, as here, the refused charges are covered by the oral charge and other requested written charges. Gosa v. State, 273 Ala. 346, 139 So.2d 321; Nelson v. State, 35 Ala.App. 1, 46 So.2d 231; Cost v. State, 30 Ala.App. 182, 2 So.2d 466; Chambers v. State, 264 Ala. 8, 84 So.2d 342.

■ There was sufficient evidence in this case to go to the jury so that the numerous affirmative charges were properly refused.

The judgment of the lower court is hereby

Affirmed.