James Thomas Braswell was indicted by the Jefferson County (Bessemer Division) Grand Jury under a one-count indictment charging him with "unlawfully, and with malice aforethought," killing Sharlon Dianne Braswell, "by beating her with a rifle, or some other unknown blunt instrument."
The appellant was duly arraigned, with his attorney present, and entered a plea of not guilty and not guilty by reason of insanity.
On October 28, 1977, the circuit court of Jefferson County ordered the appellant delivered to Bryce State Hospital at Tuscaloosa, Alabama, for observation and examination to determine his mental condition and criminal responsibility. A report entitled "An Investigation of Sanity Pursuant to Section15-16-22, Code of Alabama 1975," was filed with the court on February 14, 1978, by the superintendent of the State hospital, giving their findings after appellant's examination.
Prior to trial, the appellant filed a written plea wherein he pleaded not guilty and not guilty by reason of insanity and also filed a motion to suppress all documents, reports, statements and notes relating to his court-ordered commitment and stay at Bryce Hospital.
On April 5, 1978, after a two-day trial before a jury, the appellant was found guilty of murder in the first degree and sentenced to life imprisonment. Appellant gave immediate notice of appeal and is now before this court. Appellant's trial counsel has been appointed appellate counsel and he has been provided with a free transcript.
The sufficiency of the evidence was not raised at trial by a motion to exclude the *Page 994 
State's evidence, a request for the affirmative charge, or a motion for a new trial. Therefore, a complete rendition of the facts is not warranted.
Briefly, the facts presented at trial are that the appellant and his wife, Sharlon Dianne Braswell, had separated in the latter part of December, 1976, and subsequently were divorced. On May 31, 1977, appellant called his wife's home about 8:40 P.M., and asked if his ex-wife was at home. Her mother, Mrs. Wyatt, informed him that she was not and that she did not know where her daughter had gone. However, she said that she was under the impression that her daughter was meeting the appellant somewhere.
The appellant said that she was not meeting him and, when her mother invited him to come over to see the children, he stated, "I'd rather not, if I was to come by and her come in, I might get mad and do something that I would regret later."
Later on that date, Mrs. Wyatt received another telephone call, and while she was talking to the caller, she heard her daughter scream for her. She saw her daughter come into the house through the front door. The appellant was following close behind her and was holding a gun in her back.
The victim's mother testified that, when she met the appellant and daughter at the door, the appellant pointed the gun at her and said, "don't you move, I'm going to blow your brains out . . . don't say a word. I'm going to kill every G — damn one of you." According to the victim's mother, she pleaded with him and he said, "I ain't talking . . . when I [saw] her down there in that park that is all I need to know — with some dude."
At that point, the appellant closed the draperies on the window and hit the victim on the head with the gun, breaking the gun. The appellant then ran to the hall, grabbed another rifle and chased the victim, who was carrying her baby in her arms, out the front door.
According to the victim's mother, she ran to the front door, screamed for help, and then ran out the back door, carrying the other child with her. She stated that she then ran around the house and met her neighbor, Mr. Skelton, who had heard the screams, and that together they ran to where her daughter was lying. She said that her daughter was lying on her face and she "could hear her struggling. . . ." She said she did not observe any injuries on her daughter at that time, but that she did so later. She testified that an ambulance later arrived and carried her daughter to the hospital.
Roy Skelton testified that, on the date in question, he was living in the house across the street in front of Mrs. Wyatt's house. According to Skelton, he was awakened that night by a scream for help. He stated that he ran out of his house and encountered Mrs. Wyatt and that they found the victim lying face down near the road, her child, crying, near her.
Skelton said that the victim was turned over and a pillow was placed beneath her head. He said that, at that time, she was "struggling for breath."
Walter Whitsett of the Jefferson County Sheriff's Department arrived at the scene at "approximately 9:57 P.M. before the ambulance arrived." Nearby he found "parts of a .22 rifle. . . . The stock and the barrel [were] separated." He stated that the barrel "had blood and some matted hair on it."
The State toxicologist said that he performed an autopsy on the body of the victim, Sharlon Dianne Braswell, and found "multiple blunt force trauma to the head, lacerations, skull fractures and trauma to the brain." Further, he acknowledged that these injuries were "reasonably calculated to cause death."
The appellant was taken into custody and interviewed by a deputy sheriff of the Jefferson County Sheriff's Department. After being warned of his constitutional rights, the appellant stated "I didn't kill her because I hated her, I killed her because I loved her." *Page 995 
The appellant did not take the stand in his own behalf but presented the testimony of two expert witnesses, Dr. David Morrison, a psychiatrist, and Dr. Allan Sheely, a psychologist. Dr. Morrison testified that, based upon his interviews and examination of the appellant, it was his opinion that, on the night of the murder, the appellant was unable to distinguish right from wrong.
Dr. Sheely testified that the appellant was not in control of his actions at the time of the killing and that, therefore, his act was the result of an irresistible impulse.
 I
The appellant contends that the trial judge abused his discretion when he would not permit the defense counsel, in his opening statement, to inform the jury of what he expected the evidence to show. He insists this was prejudicial and was a denial of his constitutional right to a fair trial.
The transcript of evidence shows the appellant's opening statement, as follows:
 "MR. PADEN: That is what we ask you to pay particular attention to. We expect the evidence to show —
"MR. HALCOMBE: Objection.
 "THE COURT: Mr. Paden, you're not allowed to make statements as to what the evidence may or may not show at this time.
 "MR. PADEN: Judge, we would reserve an exception to that, that we be limited to our opening argument. It is in complete violation of the State Constitution of Alabama and the Constitution of the United States that guarantees this man a jury trial and opening statement to the jury.
"THE COURT: Overruled.
"MR. PADEN: We are limited to what we can say?
"THE COURT: Yes, sir."
From our reading of the transcript of evidence, the extent of defense counsel's opening statement is not shown. However, it is apparent there was some statement made. Therefore, we do not believe it can be earnestly maintained that the appellant was denied the right to make any opening statement to the jury.
The Supreme Court of Alabama has stated in Crawford v. State,112 Ala. 1, 21 So. 214, that the right of a defendant to be heard, by himself or through counsel, in a criminal prosecution is a matter to be regulated at the court's discretion. Under Alabama law, the purpose of an opening statement is merely to advise a jury of the issues in a case, and the scope and extent of the statement is a matter addressed to the sound discretion of the trial judge. Baker v. State, 48 Ala. App. 535,266 So.2d 340; Holifield v. State, 42 Ala. App. 209, 159 So.2d 65; Burnsv. State, 226 Ala. 117, 145 So. 436.
The trial court's refusal to allow defense counsel to comment to the jury on what he expected the evidence to show has been held not to be an abuse of the trial court's discretion. Cooperv. State, Ala.Cr.App., 348 So.2d 532; Parsons v. State, 32 Ala. App. 266, 25 So.2d 44; Hooks v. State, 45 Ala. App. 221,228 So.2d 833; Stewart v. State, 245 Ala. 511, 17 So.2d 871.
Under these facts, it is our judgment that the trial court did not abuse its discretion in refusing to permit the contested portion of the opening statement.
 II
During cross-examination of appellant's expert witness, the findings of the Commission on Lunacy of the State of Alabama regarding the mental condition of the appellant at the time of the incident were read into evidence. The appellant now insists that this was prejudicial error and warrants reversal of his case.
From the record, that portion of the witness' cross-examination which is in issue appears, as follows:
"Q. Are you aware that the Lunacy Commission —
 "MR. PADEN: Judge, we object to him going into the Lunacy Commission report. It has not been offered in evidence at this time, concerning the Lunacy Commission. It is a leading question, stating what the *Page 996 
report was. We object to it. It is prejudicial to this Defendant.
"THE COURT: Overruled.
"MR. PADEN: We except.
 "Q. (BY MR. HALCOMBE:) You have seen this report doctor, which I hold here, which is marked State's Exhibit 10?
"A. Yes.
 "(Whereupon, a file of Bryce Hospital contained in a large envelope was marked State's Exhibit 10 for identification only.)
"Q. What is the opinion of the Lunacy Commission?
 "MR. PADEN: Judge, we object to that. That is improper. It is not certified that this is from the Lunacy Commission. It is a report that this doctor has seen. He is asking what he has seen and then asking him to tell this to the jury. It is highly improper.
 "THE COURT: Overruled. The doctor testified on direct examination he had studied that report and saw nothing that changed his opinion in any way.
 "MR. PADEN: That doesn't go to the authenticity of this report. For what purpose is it being allowed?
 "MR. HALCOMBE: If it please the Court, we have a stipulation that these are properly authenticated records.
 "MR. PADEN: No, sir. We said that those are records that came from Bryce Hospital in response to your subpoena.
 "MR. HALCOMBE: And, properly authenticated, if you recall the stipulation. I just remove that report from this file, Your Honor.
 "THE COURT: You might ask the doctor if those are the reports that he said he studied.
"A. Do you want me to answer?
"THE COURT: I want him to ask whatever he wants to.
 "Q. (BY MR. HALCOMBE:) Doctor, are these the reports that you looked over?
"A. I believe they are.
 "Q. All right, sir. And, the Lunacy Commission Report was included?
"A. Yes, I remember this.
"Q. This is the report you looked at?
"A. I believe it is.
 "Q. And, what was the Lunacy Commission report, doctor?
 "MR. PADEN: We object to that. The instrument speaks for itself.
"THE COURT: Overruled.
"MR. PADEN: We except.
"A. You want me to read this?
"Q. If you would, please sir?
 "A. `It is the opinion of the Lunacy Commission, Mr. Braswell exhibits no evidence of mental disorder which would effect his criminal responsibility, either now or at the time of the alleged offense. He is able to understand the nature of the charges against him and to assist his attorney in the preparation of a defense at this time.'
 "Q. And I believe it is signed by Dr. Thomas Smith, is that correct?
 "A. Dr. Thomas Smith. Dr. James Thompson and T.J. Kounter, Superintendent.
"Q. You know Dr. Smith?
"A. Yes, I have a great deal of respect for him.
"Q. Do you know Dr. Thompson?
"A. I don't think I do.
 "MR. HALCOMBE: That is all the questions we have. Excuse me. At this time I offer what has been marked for identification, State's Exhibit 10.
"MR. PADEN: Judge, we object to that.
"THE COURT: Overruled.
"MR. PADEN: We except.
"MR. HALCOMBE: That is all the questions I have."
It is settled law in Alabama that the scope of cross-examination is addressed to the sound discretion of the trial court. Noble v. State, 253 Ala. 519, 45 So.2d 857. Its extent of range is also within the trial court's discretion.Haney v. State, 20 Ala. App. 236, 101 So. 533.
It is also settled law in Alabama that cross-examination is not limited to matters brought out on direct examination, but extends to all matters within the issues of the *Page 997 
case. Lewis v. State, 43 Ala. App. 16, 178 So.2d 649; Madden v.State, 40 Ala. App. 271, 112 So.2d 796.
In the present case, we find that appellant's defense counsel, on direct examination of appellant's expert witness, brought out that the witness had reviewed the record of appellant's stay at Bryce Hospital, but that he saw nothing in the record that would influence his opinion.
That testimony appears in the transcript of evidence, as follows:
 "Q. Doctor, in preforming your tests and so forth, did you have anything else that you used, or anybody gave you to help you in forming your opinion as to what the mental condition of James Thomas Braswell was on the night of March 31st 1977?
"MR. GREEN: May 31st.
 "Q. May 31st. — or his condition at the present time, as far as him standing trial. Was there anything else you did use in making your consideration?
"A. At that time?
"Q. Now, or any other time?
 "A. No, sir. I have reviewed the record of his stay at Bryce Hospital. But, that did not — at the time I saw those, which was only a week or ten days ago, I had already formed my opinion. I saw nothing there that influenced me one way or the other." [Emphasis added.]
Further, this court stated, Ball v. State, Ala.Cr.App.,337 So.2d 31, that insanity is a defense which must be proved to the reasonable satisfaction of the jury, regardless of the written opinion of a State psychiatrist to the effect that the accused was sane. Cross-examination touching on the question of the appellant's sanity, and testimony relating to his sanity, are for the jury's consideration.
In view of the fact that the appellant had brought out, on direct examination, that appellant's expert witness had reviewed the record from Bryce Hospital, and that the witness specifically stated that the record did not "influence [him] one way or the other," it is our judgment that it was a proper subject of inquiry on cross-examination. Further, after the witness stated that he was not influenced by the record from Bryce Hospital, we are of the view that the jury was entitled to hear the substance of any and all information he had used in arriving at his opinion of appellant's mental condition, especially in view of the fact that he had previously given extensive testimony concerning how he had arrived at his opinion.
We distinguish Benton v. State, 245 Ala. 625, 18 So.2d 428, because there the defendant attempted to introduce the findings of the Commission on Lunacy into evidence without a stipulation as to its authenticity. In the present case, had the State attempted to offer the Commission's report during the presentation of the prosecution's case in chief, without having it authenticated, its admission would have been prohibited under the rationale of Benton, supra.
Therefore, the trial court's ruling, which permitted the State's cross-examination of appellant's expert witness and the subsequent introduction of the Commission on Lunacy's report, was proper.
 III
Prior to trial, the appellant filed a motion to suppress all "documents, reports, statements and notes related to, and during the time that the [appellant] was committed to Bryce Hospital." As grounds for his motion, the appellant assigned the following:
 "3 . . . the introduction of said records would be in violation of the Defendant's Sixth Amendment right to be confronted with the witnesses against him in that Defendant is deprived of effective cross-examination of the doctors who compiled and composed said records while the Defendant was at Bryce Hospital.
 "4 . . . the introduction of said records into evidence would be in violation of the Defendant's Fifth Amendment right against self-incrimination in that statements given by the Defendant to doctors at Bryce Hospital could be used as evidence of the Defendant's guilt. *Page 998 
 "5 . . . to introduce such evidence into trial would be highly prejudicial to the Defendant.
 "6 . . . that said medical records, without more, constitute inadmissible hearsay."
The appellant now complains that the trial court committed reversible error by denying his motion to suppress evidence of the report of the Commission on Lunacy regarding his mental state at the time of the incident.
We note from the record that, prior to the appellant's presentation of his defense before the jury, a stipulation was entered into by the appellant which states that his records from his stay at Bryce Hospital were duly certified and duly authenticated as his records. Included in these medical records, which were the subject of the stipulation, was the report of the Commission on Lunacy. Further, the record shows that, at that time, appellant stated that he had "no objection."
Later, we find that the remainder of the appellant's medical records were admitted into evidence by the defense counsel. In view of this action by the appellant, we fail to see how the introduction of the Commission's report by the State and the overruling of appellant's motion to suppress such evidence, were prejudicial to appellant. Finally, in Hunt v. State,248 Ala. 217, 27 So.2d 186, the Supreme Court of Alabama determined that the Commission's examination of an appellant, ordered pursuant to the statute, does not violate his constitutional right against self-incrimination or his right to due process of law. The trial court's ruling, therefore, was not error.
 IV
In view of our rationale regarding appellant's foregoing contentions, it is our judgment that the trial court properly permitted the prosecuting attorney, in his closing argument, to make reference to the report of the Commission on Lunacy.
 V
The appellant, in his final contention, insists that the trial court was in error in allowing the introduction of photographs of the deceased victim, depicting the nature and extent of her injuries.
The gruesomeness or inflammatory nature of a photograph is not grounds for exclusion, where it has a reasonable tendency to prove or disprove some material fact in issue, or which may be in dispute or material. Richards v. State, Ala.Cr.App.,337 So.2d 171; Brown v. State, Ala.Cr.App., 331 So.2d 820. Further, a photograph which sheds light on the character and location of the wounds on the body of the victim, is admissible even though such evidence is cumulative in nature. Turk v. State, Ala.Cr.App., 347 So.2d 588.
In the present case, the photographs were introduced during the testimony of the deputy coroner who had taken the photographs of the deceased. The photographs were introduced to illustrate and to strengthen the testimony of the toxicologist who testified to the victim's cause of death. They shed light on the character and location of the victim's wounds and tended to corroborate the testimony of toxicologist. When properly identified and authenticated as here, such photographs in our judgment, are relevant and admissible under Alabama law.Robinson v. State, Ala.Cr.App., 342 So.2d 1331.
 VI
We have searched the record and transcript of evidence and have found no error. Therefore, it is our judgment that the conviction by the Jefferson Circuit Court, Bessemer Division, is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 999